ROGER E. WATSON

*v.*

DONALD F. BLACK, *Judge, etc.*

(No. 13897)

Decided December 20, 1977.

*C. Lynch Christian, III and Gregory R. Gorrell* for relator.

*Chauncey H. Browning,* Attorney General, *John L. MacCorkle,* Assistant Attorney General, for respondent.

NEELY, JUSTICE:

This habeas corpus proceeding concerns a petitioner who may have deliberately developed conflicts with his court-appointed attorney. We are therefore, provided a vehicle to discuss the circumstances under which a defendant may change his court-appointed attorney.

Petitioner was arrested on July 3, 1976 for malicious wounding and his bond was set at $10,000.00. Thereafter, the Circuit Court of Wood County appointed James M.

Bradley, Jr. to represent petitioner. Petitioner's preliminary hearing was continued several times, during which period petitioner and his counsel had a continuing disagreement concerning the advisability of having a preliminary hearing. Finally, on July 30, 1976, a preliminary hearing was held, and Bradley moved that the charges against petitioner be dismissed, on the ground that the location of the alleged crime had not been proved.

On August 2, 1976, petitioner was again taken before the magistrate, the original charges were dismissed, and petitioner was rearrested on a new warrant charging him with committing the same crime. A second preliminary hearing, this time on the new warrant, was scheduled for August 6, 1976. Again, as before, Bradley and petitioner had a disagreement concerning the merits of having a preliminary hearing. After this disagreement, petitioner says he asked Bradley to withdraw from the case. At the scheduled hearing, Bradley moved for a continuance, and the hearing was reset for August 16, 1976. Later, it was continued to August 20, 1976.

Petitioner confirmed his dissatisfaction with Bradley by writing him a letter on August 6, stating again, as he had during their earlier argument, that he was discharging Bradley. Nevertheless, Bradley came to the jail on August 16, 1976 to visit petitioner and to prepare for the preliminary hearing, which had been continued. Petitioner again expressed dissatisfaction with Bradley and fired him.

Petitioner filed his own motion for change of venue, which resulted in his case's being transferred to another magistrate's court for preliminary hearing. Due to the transfer the preliminary hearing was continued to October 4, 1976. While waiting for this hearing, Bradley prepared a writ of habeas corpus on petitioner's behalf which petitioner signed on September 9, 1976 after he and Bradley had another interview in the jail. Later on the same day, petitioner apparently had second thoughts about the habeas petition and wrote two let-

ters to the circuit judge in an attempt to have the petition withdrawn. These letters, which the judge denies receiving, also communicated petitioner's dissatisfaction with Bradley's representation of him. At the same time petitioner filed a complaint about Bradley with the State Bar, which was received. Petitioner later withdrew this complaint.

In accord with their agreement of the previous day, Bradley took petitioner before the circuit judge on September 10, 1976 to move for a reduction in petitioner's bond. At the hearing the judge reduced the bond from $10,000.00 to $8,000.00. Petitioner could not raise this reduced amount, and therefore remained in jail, where he wrote Bradley another letter discharging him on September 29, 1976.

Despite his alleged discharge, Bradley visited petitioner at jail on October 3, 12, 19, and 20, 1976, to discuss various matters concerning petitioner's case. Bradley's continued efforts on petitioner's behalf can perhaps best be explained by Bradley's statements in his first deposition filed with this Court:

> I know on several occasions Roger [petitioner] and I would discuss these matters and we would be in agreement on them, but sometime after that, he would either write me a letter or as he did the day of the trial, appear and place some items on the record which were not consistent with Roger's discussions with me.

and later in the same deposition,

> [A]fter I would receive letters from Roger, I would go talk with him. . . . Our conversations were, he didn't say it, but the tone of his conversation and the subject matter we discussed would indicate to me he didn't want me fired, that he did want me to represent him. My best recollection is that I probably received a letter after that to the contrary and I went to see him again and it was all right. . . . We could get along.

The inconsistency of petitioner's response to his appointed lawyer continued even into the first day of trial, when petitioner moved to represent himself. Under questioning by the circuit judge, petitioner equivocated by suggesting he only wanted the right to question some of the witnesses in conjunction with his appointed counsel, and then, finally, withdrew his motion, allowing Bradley to represent him at trial.

## I

The exhibits in this case, which consist of over thirty pages of well-drafted letters and *pro se* petitions from petitioner to judge, counsel, and State Bar demonstrate that the petitioner in this case is not a novice in the criminal process. In fact, the petitioner's criminal record, which the respondent appended to his answer, demonstrates that since 1961 the petitioner apparently has spent more time behind bars or on parole than he has spent at liberty.

The observations concerning petitioner's skilled writ-writing ability and prior associations with criminals are relevant because this Court's careful reading of the voluminous record generated by petitioner's counsel in this habeas corpus proceeding demonstrates that petitioner did not have reasonable grounds for alleging a conflict with his court-appointed attorney. In fact, the record discloses that in spite of petitioner's obstreperous, insolent, and personally insulting conduct towards his court-appointed lawyer, the lawyer still proceeded faithfully to represent the petitioner (with good humor) and to do everything within his power to secure the petitioner the most favorable possible outcome.

The only grounds which petitioner alleges for conflict with his court-appointed lawyer are that the lawyer did not wish to waive a preliminary hearing, which the petitioner wished to waive, and that court-appointed counsel did not move quickly enough to have petitioner's bond reduced. This Court agrees with petitioner that a motion for bond reduction is a serious matter and should be

made as quickly as possible when a defendant is in jail; however, in light of petitioner's prior record, the violence of the alleged offense, and the already reasonable bond of ten thousand dollars ($10,000.00) which was set by the magistrate, we can certainly infer that petitioner's lawyer felt the entire bond reduction proceeding would prove fruitless if pressed immediately. In fact, after the delay in holding the preliminary hearing made the petitioner's pre-trial release appear to be a more compelling cause, petitioner's lawyer succeeded in having the bond substantially reduced. Certainly petitioner's court-appointed counsel served him well by insisting that petitioner not waive his preliminary hearing and permit counsel to discover the State's testimony.

The petitioner alleges that he wished to retain his own counsel. Obviously a defendant's right to retain counsel of his own choice is absolute. *Chandler v. Fretag*, 348 U.S. 3 (1954); *United States v. Inman*, 483 F.2d 741 (4th Cir. 1973). Nevertheless, the record in this case discloses that petitioner, while he alleged that he was able to retain counsel, never offered a retainer fee to the lawyer whom he wished to retain. The testimony of Richard Bush, the lawyer whom petitioner alleges he was deprived of retaining, conclusively demonstrates that while petitioner's fiancee approached Mr. Bush for the purpose of retaining him, that she never tendered the $250.00 retainer fee which Bush said was necessary. The record also demonstrates conclusively that petitioner was indigent and needed court-appointed counsel. Furthermore, the testimony of Judge Black, Chief Judge of the Circuit Court of Wood County, is that Mr. Bradley, who was appointed to defend petitioner, was one of the better and more skilled attorneys who were available to be appointed to represent petitioner.

## II

We conclude in this case that petitioner was sufficiently skilled in the intricacies of criminal law and sufficiently aware of this Court's continuing efforts to secure the highest possible standards of protection of individual

rights that he deliberately created a dilemma for the trial court in the hopes of generating error.[1]

In West Virginia an accused is entitled to effective representation by a lawyer reasonably skilled and experienced in the practice of criminal law. *State v. Thomas*, W. Va., 203 S.E.2d 445 (1974). Once competent counsel has been appointed for an accused, it is the accused's obligation to exert good faith efforts to get along with his lawyer and, Concomitantly, for the lawyer to generate his client's confidence in him by demonstrating his interest in his client's case.

Although an indigent criminal defendant has a right to be represented by counsel, he does not have a right to be represented by a particular lawyer, or to demand a different appointed lawyer except for good cause. In order to establish good cause the defendant must show: (1) a conflict of interest; (2) a complete breakdown in communication with his counsel after exhaustion of good-faith efforts to work with counsel; or (3) an irreconcilable conflict which might lead to an unjust verdict. *United States v. Young*, 482 F.2d 993 (5th Cir. 1973); *United States v. Calabro*, 467 F.2d 973 (2d Cir. 1972); *Brown v. Craven*, 424 F.2d 1166 (9th Cir. 1970). However, before any of these grounds may successfully be urged as cause for removal of court-appointed counsel, it must appear that the objection to counsel has been made in good faith and not for the purpose of creating a dilemma for the trial court in order to produce endless grist for the post-conviction, habeas corpus, writ-writing mill.

Four days before the trial of this petitioner for malicious wounding, the trial court held a hearing on petitioner's request for assignment of new counsel and found that no grounds existed to discharge Mr. Bradley. Although this hearing was not transcribed, petitioner's counsel in this habeas corpus proceeding has developed the issue thoroughly. Even petitioner's testimony taken

---

[1] For a general discussion of this tactic *see*: M. Fleming, *The Price of Perfect Justice*, Chapt. 9 (Basic Books, 1974).

by itself does not show *good faith* conflicts and differences with his court-appointed attorney.

In order for this problem to be handled adequately in the future, trial courts should make records on all motions for removal of court-appointed attorneys. Whenever it is suggested to the court that there is a conflict of interest, breakdown in communication, irreconcilable conflict, or any other cause for dissatisfaction by a defendant with his court-appointed lawyer, the trial court should hold a hearing on the matter and dispose of it on the record. While the absence of a record on this question is not *per se* reversible error, it leaves this Court with very little information on which to arrive at a conclusion in an appeal and, in addition, such absence obviously creates myriad opportunities for the working of mischief in post-conviction habeas corpus proceedings.

This Court recognizes that there will be occasions on which there is such a sharp clash of personalities between court-appointed lawyer and client that fair representation will require the replacement of appointed counsel. An indigent criminal defendant (who obviously has a higher likelihood of being incarcerated pending trial than persons who are not indigent) is entitled to a lawyer who is solicitous of his concerns and who will willingly and graciously accommodate him in the doing of such things as the client feels are in his best interest; however, a lawyer is not required to do things which are obviously harmful to the client's interests or which are obviously absurd. The preeminent condition precedent of a motion to change court-appointed counsel is a showing of good faith. Where an objection to appointed counsel has not been made in good faith and is rejected for that reason, a defendant proceeds at his peril if he refuses to cooperate with court-appointed counsel.

For the reasons set forth above, the relief in habeas corpus prayed for by petitioner is denied and the writ heretofore granted is discharged.

*Writ denied*