BENHAM, Justice.
 

 Christopher D. Davenport appeals his conviction for the felony murder of three-year-old Joycelyn Broadway.
 
 [1]
 
 The evidence at trial showed that while the woman with whom he was living worked, Davenport stayed home with her daughter Joycelyn. As the mother arrived home on October 18, 2001, she heard Davenport say, "I'm tired of you pissing yourself." She found her daughter unresponsive. Emergency medical technicians responding to the mother's 911 call found Joycelyn in cardiac arrest and she was declared dead shortly after her arrival at a hospital. An autopsy revealed a ruptured left eardrum, bruising on the left side of Joycelyn's face, a hand-shaped bruise behind her left ear, laceration inside her mouth, and swelling of the brain. The cause of death was blunt force trauma, more
 

 **30
 

 specifically, diffuse axonal injury, a condition in which nerve fibers in the brain are torn when the head is suddenly put into rotational movement, as by a blow to the side of the head. Davenport initially claimed Joycelyn suddenly became lifeless as he changed her clothes and that he fell on top of her while running down the stairs to the ambulance. Confronted with evidence of Joycelyn's injuries, Davenport admitted striking her twice, but denied he intended to kill her. Bloody clothes and a towel were found in the apartment.
 

 1. The evidence adduced at trial and summarized above was sufficient to authorize a rational trier of fact to find Davenport guilty beyond a reasonable doubt.
 
 Jackson v. Virginia,
 

 443 U.S. 307
 
 ,
 
 99 S.Ct. 2781
 
 ,
 
 61 L.Ed.2d 560
 
 (1979);
 
 Kennedy v. State,
 

 277 Ga. 588
 
 (1),
 
 592 S.E.2d 830
 
 (2004).
 

 2. In two enumerations of error, Davenport complains of the trial court's removal of his original appointed counsel. With trial set for September 2004, Davenport and his appointed counsel appeared on July 7, 2004, for a hearing on pre-trial motions. The prosecuting attorney expressed concern at that hearing that counsel was not providing adequate representation and was filing motions for dilatory purposes; that counsel had first raised an insanity defense 10 days before a
 
 *516
 
 previously-scheduled trial date although he had been representing Davenport for almost two years at that point; that counsel did not prepare Davenport for an interview with a psychologist or even inform him of the interview beforehand; that counsel had been unprepared for a previous motion hearing; and that counsel had filed a number of motions on the evening before the July 7 hearing despite having had three months' notice of the hearing. After a discussion of the level of counsel's preparedness and a conversation with Davenport in which he expressed his interest in having his day in court as soon as possible and his willingness, because of his interest in moving on to trial, to continue with counsel as his attorney, the trial court permitted the motions hearing to proceed. However, when the trial court came to understand that counsel was attempting to present the testimony of a psychologist concerning whether Davenport had a mental illness which would have prevented him from making a knowing and intelligent waiver of his rights when questioned by a police officer, the issue of whether counsel was performing his duties competently was revisited by the trial court. Concluding that counsel had made a meaningful hearing on the issue of the voluntariness of Davenport's statement impossible by ignoring his discovery responsibilities and instructions given at earlier appearances, and that counsel was willing, in order to avoid the consequences of not having made proper discovery, to forego the testimony he had jut asserted was relevant to his client's ability to make a voluntary statement, the trial court concluded counsel was not
 

 **31
 

 performing competently and determined it was necessary to replace counsel with new and more competent counsel. The trial court then suspended the motions hearing, postponed the trial, and appointed new counsel who represented Davenport at trial.
 

 a) Davenport contends the removal of his appointed counsel without notice and an opportunity to be heard denied him due process of law. The claim of lack of notice was waived by the failure to raise the issue below (
 
 Andrews v. State,
 

 276 Ga.App. 428
 
 (3),
 
 623 S.E.2d 247
 
 (2005)), and the claim he was denied an opportunity to be heard is controlled adversely to Davenport by the record which shows the trial court twice sought explanations from counsel regarding his handling of the case and questioned Davenport about his preferences.
 

 b) In Davenport's other complaint regarding the removal of counsel, he contends that action was an abuse of discretion.
 

 The choice of appointed counsel is a matter governed by the trial court's sound exercise of discretion and will not be disturbed on appeal unless abused. [Cit.] However, when a defendant's choice of counsel is supported by objective considerations favoring the appointment of the preferred counsel, and there are no countervailing considerations of comparable weight, it is an abuse of discretion to deny the defendant's request to appoint the counsel of his preference.
 

 Davis v. State,
 

 261 Ga. 221
 
 , 222,
 
 403 S.E.2d 800
 
 (1991). This standard applies equally to the removal of appointed counsel because the effect of removal is that counsel of choice is not appointed.
 
 Chapel v. State,
 

 264 Ga. 267
 
 (2),
 
 443 S.E.2d 271
 
 (1994).
 

 Assuming Davenport's statement that he wanted to go to trial and would accept counsel's word that he would be prepared for trial amounted to "objective considerations favoring appointment of the preferred counsel," we conclude "countervailing considerations of comparable weight" supported the trial court's decision to remove counsel. As noted above, the trial court expressed concern that counsel's failure to be prepared would delay the trial, as had already occurred in this case. The final incident which prompted the trial court to act was counsel's willingness to forego, because of his own failure to comply with discovery requirements and the trial court's earlier direction, the expert testimony of a psychologist whose testimony counsel had contended would be relevant to the admissibility of Davenport's custodial statement.
 

 [T]he right to counsel of choice does not extend to defendants who require counsel to be appointed for them.... We have recognized a trial court's wide latitude in balancing the right
 

 **32
 

 to counsel of choice against the needs of fairness, and against
 
 *517
 
 the demands of its calendar. The court has, moreover, an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them. (Citations and punctuation omitted.)
 

 U.S. v. Gonzalez-Lopez,
 

 548 U.S. 140
 
 ,
 
 126 S.Ct. 2557
 
 , 2565-2566,
 
 165 L.Ed.2d 409
 
 (2006).
 

 We conclude the trial court's efforts to balance "the right to counsel of choice against the needs of fairness, and against the demands of its calendar" (id.) and to protect Davenport's right to a fair trial and representation by competent counsel were not an abuse of its discretion and did not, therefore, constitute error. Compare
 
 Davis v. State,
 
 supra,
 
 261 Ga. 221
 
 ,
 
 403 S.E.2d 800
 
 (abuse of discretion when countervailing considerations not of comparable weight). In reaching that conclusion, we have taken into account the fact that it was the prosecuting attorney who initially addressed to the trial court concerns regarding counsel's conduct of the defense, and the concerns expressed by this Court and the Court of Appeals regarding efforts by opposing counsel to have an attorney removed from representation. See
 
 Bernocchi v. Forcucci,
 

 279 Ga. 460
 
 (2),
 
 614 S.E.2d 775
 
 (2005) (objection from opposing counsel should be viewed with caution for it can be misused as harassment);
 
 Clough v. Richelo,
 

 274 Ga.App. 129
 
 (1),
 
 616 S.E.2d 888
 
 (2005) (courts are reluctant to grant motions to remove opposing counsel because of immediate adverse effect by separating client from counsel of choice, because parties seek removal of opposing counsel for tactical reasons, and because such motions inevitably cause delay). Even considering those concerns, our review of the record in this case, and especially the fact the trial court was willing to proceed with counsel representing Davenport after considering the State's expressions of concern, until counsel expressed willingness to forego useful testimony, persuades us that the trial court, rather than being unduly swayed by the prosecuting attorney's concern, exercised its discretion properly.
 

 3. The indictment charged Davenport with aggravated assault based on an allegation he held a knife to the throat of one of Joycelyn's siblings, and with two counts of cruelty to children based on allegations he struck Joycelyn's two siblings with a belt, his hands, and a plastic object during the time he resided with them. Responding to a motion to sever those three counts, the trial court granted the motion with respect to the aggravated assault count, but denied it with respect to the cruelty to children counts. Davenport enumerates as error the refusal to sever the two cruelty to children counts. Because "an acquittal does not necessarily negate the prejudice which may result from improper joinder," (
 
 Wilcox v. State,
 

 271 Ga. 544
 
 , fn.2,
 

 **33
 

 522 S.E.2d 457
 
 ) (1999)), we will address this issue notwithstanding Davenport's acquittal of the cruelty charges naming Joycelyn's siblings as victim.
 

 [A] defendant has an absolute right to severance of charges that are joined solely because they are of the same or similar character. [Cit.] . . . [Severance is not mandatory when offenses have been joined because evidence of one offense could be admitted upon the trial of another offense to show a common motive, plan, scheme, or bent of mind. [Cit.] In the latter circumstance, the decision whether to sever falls within the discretion of the trial court, which should grant a pre-trial severance if it is "appropriate to promote a fair determination of the defendant's guilt or innocence of each offense considering whether in view of the number of offenses charged and the complexity of the evidence to be offered, the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense." [Cit.]
 

 Green v. State,
 

 279 Ga. 455
 
 (2),
 
 614 S.E.2d 751
 
 (2005). The trial court noted that the allegations in the cruelty to children counts portrayed a series of criminal acts so closely connected by geography (the crimes took place in apartment where Davenport was living with the children), time (the allegations concerned events, occurring in the approximately ten-week period that Davenport lived with the children and their mother), victim (the victims were all siblings), and manner (the murder allegations and cruelty to children allegations all involved Davenport striking
 
 *518
 
 the children to the extent they were caused to suffer cruel and excessive physical pain) as to constitute a scheme or plan of criminal conduct. The trial court further stated that it had specifically examined the number of victims, complexity of the evidence, and number of offenses, and found none of those factors would prevent the jury from being able to distinguish the evidence and apply the law intelligently to each offense. Since the trial court's findings were supported by the evidence and it expressly applied the factors set out in
 
 Green v. State,
 
 supra, there was no abuse of discretion in its refusal to order severance of the offenses.
 

 Judgment affirmed.
 

 All the Justices concur.
 

 The death occurred on October 18, 2001, and Davenport was indicted on April 24, 2002, for malice murder, felony murder (cruelty to children), three counts of cruelty to children (one involving the murder victim and two involving her siblings), and aggravated assault. A motion to sever offenses for trial was granted as to the aggravated assault count, but denied as to the cruelty to children counts involving the murder victim's siblings. A jury trial commencing April 18, 2005, ended on April 21 with a verdict of guilty of malice murder, felony murder, and the count of cruelty to children involving the murder victim, and not guilty of the other offenses. The trial court sentenced Davenport to life imprisonment. Davenport's trial counsel filed a motion for new trial on April 25, 2005, and amended it on May 23, 2005, but both pleadings contained an incorrect case number. New counsel appointed on August 26, 2005, obtained a consent order for out-of-time appeal that same day, and filed another motion for new trial on September 1, 2005, amending it October 16, 2006. After a hearing on November 3, 2006, the motion for new trial was denied on November 13, 2006. Pursuant to a notice of appeal filed December 13, 2006, the appeal was docketed in this Court on May 18, 2007, and was submitted, for a decision on the briefs.