696 S.E.2d 269

**STATE of West Virginia, Plaintiff Below, Appellee**

v.

**DeAaron FIELDS, Defendant Below, Appellant.**

No. 34746.

Supreme Court of Appeals of West Virginia.

Submitted April 13, 2010.

Decided April 21, 2010.

754

Robert C. Catlett, Esq., Deputy Public Defender, Kanawha County Public Defender Corporation, Charleston, WV, for Appellant.

Darrell V. McGraw, Jr., Esq., Attorney General, Benjamin F. Yancey, III, Esq., Assistant Attorney General, Charleston, WV, for Appellee.

KETCHUM, Justice:

The appellant, DeAaron Fields, was found guilty by a jury in the Circuit Court of Cabell County, West Virginia, of murder of the first degree. According to the State, the appellant shot and killed the victim, Karen L. Stultz, in an alley adjacent to a gasoline station on Hal Greer Boulevard in Huntington, West Virginia. The shooting arose from a dispute concerning an illicit drug transaction. The appellant was then 14 years old. His trial was conducted following an evidentiary hearing and order transferring the case, initiated upon a juvenile delinquency petition, to the adult criminal jurisdiction of the Circuit Court.

After the return of the verdict, the State, at the request of the victim's family, asked the Circuit Court to add "with mercy" to the appellant's conviction of murder of the first

degree. The Circuit Court did so, thereby rendering a second phase of the trial concerning the question of mercy unnecessary. On April 27, 2005, the appellant was remanded to the Industrial Home for Youth in Industrial, West Virginia, until his 18th birthday and, thereafter, to the penitentiary. The record indicates that, now over 18 years of age, the appellant is serving his sentence of life, with mercy, at the Mount Olive Correctional Complex in Mount Olive, West Virginia. He has been resentenced to facilitate his appeal to this Court.

The appellant's lone assignment of error concerns whether the Circuit Court erred in, *sua sponte*, removing his court-appointed counsel, David D. Perry, from the case prior to trial for discovery violations. It should be noted that, previously, in March 2005, this Court refused the appellant's petition for a writ of prohibition which also challenged Perry's removal.[1]

This Court has before it the petition for appeal, all matters of record and the briefs filed by counsel. As discussed below, the circumstances of this case reveal good cause for the removal of the appellant's appointed counsel for discovery violations and, in any event, no error in view of the representation provided to the appellant by other counsel. The appellant's conviction of murder of the first degree and his sentence to life imprisonment, with mercy, are, therefore, affirmed.

I.

**Factual Background**

The record indicates that the alley adjacent to the Chevron gasoline station on Hal Greer Boulevard in Huntington was commonly used for illicit drug transactions. At trial, the appellant testified that he and other young people used the alley to sell crack cocaine and that one of their customers was the victim, Karen L. Stultz.

1. The petition, styled *State ex rel. DeAaron Levon Myers–Fields v. Ferguson, Judge*, Supreme Court No. 050394, was refused by this Court on March 24, 2005. Referring to written employment contracts dated June 2, 2004, and February 1, 2005, wherein Perry agreed to represent the appellant for $1.00 and $10.00, plus costs, respectively, the appellant asserted that Perry was retained to represent him rather than appointed and that, consequently, Perry's removal by the Circuit Court violated the appellant's right to private counsel of choice. For the reasons expressed in this opinion, that assertion, also made in this appeal, is not dispositive of the issue of Perry's removal.

According to the State, on the morning of April 21, 2004, the appellant, unhappy over a disputed drug transaction with a female customer, retrieved his automatic pistol at the residence of Justin Elliott and stated that he was going to "merc," i.e., kill, "that bitch." That evening around 9:00 p.m., a white Mustang automobile driven by Stultz, age 39, was stopped in the alley. At this time an individual exited from the passenger side of the Stultz vehicle, yelled "fuck you, you bitch," and, with the passenger door still open, fired several shots into the car with a handgun. The assailant fled the scene. Stultz then managed to drive from the alley and traveled a short distance on Hal Greer Boulevard where the automobile came to rest against a pole on the grounds of Cabell Huntington Hospital. It was determined that Stultz had been shot four times: twice in the thigh and twice in the upper body. The upper body wounds were fatal. A toxicology examination revealed that Stultz had been using cocaine. The police investigation determined that the weapon used in the shooting was a .25 caliber semi-automatic pistol.

The evidence of the State further indicated that, soon after the shooting in the alley, the appellant told various individuals that he had shot at, or killed, the female customer. Moreover, an eyewitness to the shooting, Christopher T., who knew the appellant from school, identified the appellant to the police as the assailant.[2] A few hours after the events near the Chevron station, the appellant was taken into custody at his parents' home. A subsequent forensic laboratory test failed to discover any particles of gunshot residue on the appellant. The pistol was never recovered.

## II.

### Pre–Trial Proceedings

On April 22, 2004, a juvenile delinquency petition was filed in the Circuit Court of Cabell County alleging that the petitioner committed the crime of murder. Also that day, the juvenile referee appointed the local public defender as counsel for the appellant and conducted a detention hearing. The public defender was Kent Bryson. At the subsequent preliminary hearing, probable cause was found for the case to proceed on the juvenile delinquency petition.

Thereafter, on June 2, 2004, attorney David D. Perry, an attorney in Huntington filed a notice of appearance in the Circuit Court stating that he had been retained by the appellant's father to represent the appellant. The contract of representation provided for an attorney fee of $1.00. Upon the State's motion, the Circuit Court conducted an evidentiary hearing and transferred the appellant to the Court's adult criminal jurisdiction.[3]

In October 2004, the grand jury returned a single count indictment charging the appellant with the murder of Karen L. Stultz. *W.Va.Code*, 61–2–1 (1991). On November 1, 2004, the Circuit Court scheduled the trial for December 7, 2004. Soon after, Perry filed 14 motions, including 10 motions for discovery. Subsequently, Perry filed additional motions, and on November 29, 2004, the Circuit Court amended the trial date from December 7 to December 8, 2004.

On December 1, 2004, the State filed responses to the appellant's requests for discovery. The items filed included a crime scene report prepared by Huntington Police Sergeant David Castle. Later, on December 3, the State filed a request for discovery seeking, *inter alia:* (1) the names and addresses of defense witnesses, (2) a written notice of the appellant's intention to offer a defense of alibi and (3) the names and address of alibi witnesses, if that defense was intended. On December 6, 2004, Perry filed a list of 20 defense witnesses. However, the record before this Court indicates that no addresses were provided.

2. In view of his youth, the initial "T" will be used in this opinion rather than Christopher's full name. *In the Matter of Jonathan P.*, 182 W.Va. 302, 303 n. 1, 387 S.E.2d 537, 538 n. 1 (1989).

3. The hearing was held pursuant to *W.Va.Code*, 49–5–10(d)(1) (2001), which states in part: "The court shall transfer a juvenile proceeding to criminal jurisdiction if there is probable cause to believe that: (1) The juvenile is at least fourteen years of age and has committed ... the crime of murder[.]"

Pursuant to an order entered on December 8, 2004, the Circuit Court appointed Perry, at his request, to represent the appellant. The order stated: "It is further ordered that this appointment is *Nunc Pro Tunc* relative to the date that counsel began work as defense counsel in the case at bar. Thus, this order is entered for the 2nd day of June, 2004, for Mr. Perry, *Nunc Pro Tunc.*" As the Circuit Court later explained: "On December the 8th upon Mr. Perry's request I appointed him as counsel. He represented to me, I think, that he had only charged the defendant's family One Dollar to originally get involved in this case and he had many, many hours." *See,* n. 1, *supra,* concerning the June 2, 2004, written employment contract.

In addition to retroactively appointing Perry as counsel for the appellant, the Circuit Court, over Perry's objection, continued the scheduled trial from December 8, 2004, to February 1, 2005. Thereafter, on January 21, 2005, Perry filed a notice of the appellant's intention to offer the defense of alibi, with a list of alibi witnesses and addresses. The notice alleged that the appellant was at his parents' home at the time of the shooting. The Circuit Court later observed that, between the State's request on December 3, 2004, for alibi witnesses and January 21, 2005, when those witnesses were disclosed, 49 days had elapsed. On January 26 and 27, 2005, Perry filed supplemental witness lists, neither of which, according to the record before this Court, included addresses.

On January 27, 2005, the State moved to continue the trial scheduled for February 1, 2005. The motion alleged, *inter alia,* that the State had not had adequate time to evaluate the merit of the alibi witnesses' probable testimony. The following day, Perry and Huntington attorney Glen D. Conway filed a response in opposition to the motion to continue. In addition, Perry and Conway filed a motion to dismiss the indictment. The record indicates that the response and motion to dismiss constituted Conway's first appearance in the case as co-counsel for the appellant. Perry subsequently explained that he was paying Conway himself.

### III.

### The Removal of Perry and the Appellant's Trial

A hearing was conducted by the Circuit Court on January 31, 2005, the day before the scheduled February 1 trial. Perry and Conway appeared for the appellant, and Cabell County Assistant Prosecutors Brent W. Walters and Sean K. Hammers appeared for the State. The Circuit Court denied motions to dismiss the indictment, and Perry announced that the appellant was ready for trial. At-that point, the Circuit Court set forth the procedural history of the case and ruled that Walters, as lead prosecutor, and Perry, as appointed counsel for the appellant, should be removed from the case. The Circuit Court stated that the Cabell County Prosecuting Attorney would be directed to replace Walters. Perry was ordered to submit a voucher for his services. It should be noted that the validity of the Court's removal of Assistant Prosecutor Walters is not an issue before this Court. It should also be noted that, during the Court's discussion of the procedural history, Perry offered to withdraw from the case.

The Court further ruled that Huntington attorney John H. Laishley, who had represented the appellant in several unrelated juvenile proceedings, and Conway would be appointed as defense counsel. Finally, the Circuit Court rescheduled the trial date to April 19, 2005. Orders were subsequently entered reflecting those rulings. An order entered on January 31, 2005, appointing Laishley and Conway stated that the appellant's "Eligibility Affidavit for Assignment of Legal Counsel" had been filed. In February 2005, the Circuit Court granted a motion filed by Laishley to appoint a guardian *ad litem* for the appellant. Huntington attorney Neil R. Bouchillon was so appointed.

The reasons given by the Circuit Court for the removal of Perry will be discussed below. Essentially, the Court concluded that Perry had been dilatory in the exchange of pre-trial discovery information while, at the same time, proclaiming a readiness for trial. In particular, the Circuit Court determined that the case was not, in fact, ready for trial and that the trial date needed to be rescheduled

once again. The Circuit Court pointed out violations of certain discovery-related rules, including West Virginia Rule of Criminal Procedure 12.1(a) concerning a defendant's notice of alibi, Rule 16(b)(1)(D), concerning the disclosure of defense witnesses, and West Virginia Trial Court Rule 32.01, regarding the expeditious transfer of discoverable material.

Nevertheless, the next day, Perry filed a motion for a speedy trial, accompanied by a notice of appearance alleging that he had been newly retained as defense counsel by the appellant's parents. Attached to the notice of appearance was an employment contract dated February 1, 2005, stating that Perry had been hired for $10.00, plus costs, and a letter from the appellant's parents expressing their dissatisfaction with Laishley's representation of their son in prior, separate matters. *See*, n. 1, *supra.* None of the documents filed by Perry addressed the grounds for his removal set forth by the Circuit Court during the January 31, 2005, hearing. On February 10, the Circuit Court, noting that Perry had been removed "for cause," struck the notice of appearance, concluding that it was an attempt to circumvent the Court's prior ruling.

Thereafter, the defense filed various pretrial motions, and the appellant rejected a plea to murder of the second degree. The trial was bifurcated into guilt and punishment phases. The guilt phase began on April 19, 2005, and concluded on April 22, 2005. The appellant was represented by Laishley and Conway. Guardian *ad litem* Bouchillon was present on the appellant's behalf. The State called 10 witnesses, plus two rebuttal witnesses, and the defense called 9 witnesses, including the appellant, plus one rebuttal witness. Both Laishley and Conway fully participated in the examination of witnesses. The appellant's defense focused both on alibi, i.e., that the appellant was at home at the time of the shooting, and weaknesses in the State's case concerning: (1) the physical evidence, (2) the identification of the appellant as the assailant and (3) the credibility of the State's witnesses. At the conclusion of the trial, the jury found the appellant guilty of murder of the first degree.

Before the punishment phase began, the victim's family asked the Circuit Court to add "mercy" to the conviction. The request was granted. Accordingly, the penalty phase of the trial was rendered unnecessary, and the appellant was sentenced to a term of life, with mercy. This appeal followed.

## IV.

### Discussion

■ The employment contracts of June 2, 2004, and February 1, 2005, notwithstanding, this case falls squarely within the area of law concerning the removal of court-appointed counsel, rather than that line of authority concerning the removal of privately retained counsel of choice. That is for a number of reasons. The December 8, 2004, order appointing Perry was entered *nunc pro tunc* to June 2, 2004, the date of Perry's first appearance in the case and the date of the first contract purporting to retain Perry for a fee of $1.00. Thus, Perry's appointment by the Circuit Court completely overlapped the period of his employment, up to the time of his removal. Moreover, as the Circuit Court pointed out, the December 8, 2004, appointment was "upon Mr. Perry's request." At the time of his removal on January 31, 2005, Perry was, thus, the appellant's appointed counsel, at which time Laishley and Conway were then appointed, and Perry was directed to file a voucher for his services. The January 31, 2005, order reflecting the appointment of Laishley and Conway stated that the appellant's "Eligibility Affidavit for Assignment of Legal Counsel" had been filed. Prior to Perry's involvement in the case, public defender Kent Bryson represented the appellant during the proceedings before the juvenile referee. Finally, the appellant has been represented by various appointed counsel for purposes of appeal. The only issue before this Court, therefore, concerns whether the Circuit Court erred in, *sua sponte*, removing court-appointed attorney Perry from the case, prior to trial, for discovery violations.

Citing the right to assistance of counsel expressed in U.S. Const. amend. VI, and W.Va. Const. art. III, § 14, the appellant

contends that the Circuit Court abused its discretion in removing Perry from the case. According to the appellant, the removal was without sufficient cause because Perry's alleged discovery violations did not rise to the level of misconduct or incompetence warranting removal. Furthermore, the appellant states that the Circuit Court failed to consider lesser sanctions, such as contempt or the providing of an opportunity to Perry to cure the transgressions. Moreover, the appellant asserts that the Circuit Court failed to set forth findings of fact and conclusions of law for the removal.

The State, on the other hand, contends that the right to retained counsel of choice does not extend to appointed counsel or substitute appointed counsel for an indigent criminal defendant, especially where the attorney, so appointed, is reasonably skilled and experienced in the practice of criminal law. *State v. Sheppard*, 172 W.Va. 656, 668, 310 S.E.2d 173, 186 (1983). In the latter regard, the State emphasizes that Laishley was complimented by the guardian *ad litem* and the Circuit Court upon the quality of his representation of the appellant in this case.[4] In addition, the State contends that the Circuit Court gave detailed reasons for Perry's removal.

■ Syllabus point 2 of *Watson v. Black*, 161 W.Va. 46, 239 S.E.2d 664 (1977), holds in part: "While an indigent defendant is entitled to competent counsel, he is not entitled to the appointment of any particular lawyer[.]" *State ex rel. Michael A.P. v. Miller*, 207 W.Va. 114, 121, 529 S.E.2d 354, 361 (2000); syl. pt. 4, *Sheppard, supra. See also, United States v. Gonzalez–Lopez*, 548 U.S. 140, 144, 126 S.Ct. 2557, 2561, 165 L.Ed.2d 409, 416 (2006) (the right of counsel of choice is ordinarily associated with defendants who do not require appointed counsel); *State ex rel. Blake v. Hatcher*, 218 W.Va. 407, 413, 624 S.E.2d 844, 850 (2005) (the right to choice of counsel is not absolute).

■ Moreover, upon conducting a hearing, a circuit court can remove a court-appointed attorney for good cause. *Watson, supra,* 161 W.Va. at 52, 53, 239 S.E.2d at 668 (representation by a particular court-appointed lawyer can only be rejected for good cause, and a hearing should be conducted); *State v. Sandler,* 175 W.Va. 572, 573, 336 S.E.2d 535, 536 (1985) (good cause must be shown for the dismissal of court-appointed counsel). The reasons for such removal should be placed on the record for purposes of review. *See, Blake, supra,* 218 W.Va. at 418, 624 S.E.2d at 855 (a record for review is needed in view of the constitutional interests at stake). Although legal precedent ordinarily concerns instances where it is the indigent criminal defendant rather than the trial court who is dissatisfied with court-appointed counsel, the removal, in some circumstances, can be upon the court's own motion. *People v. Lucev,* 188 Cal.App.3d 551, 233 Cal.Rptr. 222 (1986); Debra T. Landis, Annotation, *Power of Court to Change Counsel Appointed for Indigent, Against Objections of Accused and Original Counsel,* 3 A.L.R.4th 1227 (Supp.2009). The removal of a court-appointed attorney by a circuit court is reviewed under an abuse of discretion standard. *State ex rel. Michael A.P., supra.,* 207 W.Va. at 116, 529 S.E.2d at 356 (decision to disqualify court-appointed counsel is within the discretion of the trial court); *Davenport v. State,* 283 Ga. 29, 656 S.E.2d 514 (2008) (the decision in a murder case to remove court-appointed counsel before trial for various reasons, including the ignoring of discovery responsibilities, was not an abuse of discretion).

In *People v. Lucev, supra,* the trial court, on its own motion, removed the public defender as counsel for the defendant for being unable to try the case in a timely manner. Specifically, the public defender filed a late motion for a continuance seeking a 13–week delay of the trial based upon matters which could have been resolved earlier. Thereafter, the defendant, with new counsel, was found guilty by a jury of aiding

---

**4.** On the first day of trial, Bouchillon, the appellant's guardian *ad litem,* commented to the Circuit Court: "I think Jack Laishley has been extremely zealous on behalf of this gentleman[.]" Thereafter, the Circuit Court stated during the appellant's sentencing hearing: "I think Mr. Laishley and his counsel did an excellent job. I don't know what else they could have done. His closing argument he hit on the right points."

and abetting a first degree murder. Upon appeal, the California court upheld the removal. Recognizing that a trial court's discretion to remove an attorney, on its own motion, is severely limited, the Court nevertheless observed that a removal may be warranted, even over the objections of the defendant and the attorney, to eliminate potential conflicts, ensure adequate representation or prevent substantial impairment of court proceedings.

West Virginia Rule of Criminal Procedure 16 concerns "Discovery and Inspection," and subsection (b)(1)(D) thereof provides in part:

> If the defendant requests disclosure under subdivision (a)(1)(F) of this rule [pertaining to a request for the names and addresses of witnesses for the State], upon compliance with such request by the state, the defendant, on the request of the state, shall furnish the state with a list of the names and addresses of the witnesses the defendant intends to call in the presentation of the case in chief.

Pursuant to Rule 16(d)(2), in the event of failure to comply with a request for discovery or inspection, the circuit court may "order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed, *or it may enter such other order as it deems just under the circumstances.*" (emphasis added)

In this case, Perry requested the discovery of State witnesses, and on December 1, 2004, the State filed a list of witnesses which included both names and addresses. On December 3, 2004, shortly before the scheduled trial on December 8, the State requested the appellant's witnesses. As stated above, Perry filed a list of 20 defense witnesses on December 6, 2004. No addresses were provided. The Circuit Court subsequently determined that Perry's list of names, without the addresses, constituted a violation of Rule 16(b)(1)(D).

Soon after, the Circuit Court rescheduled the trial for February 1, 2005. On January 21, 2005, Perry filed a notice of alibi and provided the names and addresses of the appellant's alibi witnesses. However, as the Circuit Court observed, the alibi information was provided 49 days after being requested by the State. The State's request for that information occurred after the State had disclosed the crime scene report prepared by Huntington Police Sergeant David Castle from which the time, date and place of the shooting was discernable. Moreover, paragraph 1 of Perry's notice of alibi stated: "It is alleged by the State of West Virginia that the shooting at issue occurred on April 21, 2004, at approximately 9:04 p.m." [5]

West Virginia Rule of Criminal Procedure 12.1(a) states:

> Upon written demand of the attorney for the state stating the time, date and place at which the alleged offense was committed, the defendant shall serve within 10 days, or at such different time as the court may direct, upon the attorney for the state a written notice of the defendant's intention to offer a defense of alibi. Such notice by the defendant shall state the specific place or places at which the defendant claims to have been at the time of the alleged offense and the names and addresses of the witnesses upon whom defendant intends to rely to establish such alibi.

For failure of either party to comply with Rule 12.1, subsection (d) of the Rule provides that "the court may exclude the testimony of an undisclosed witness offered by such party as to the defendant's absence from or presence at the scene of the alleged offense."

Here, the appellant's alibi witnesses and their addresses were, in fact, disclosed. Nevertheless, the Circuit Court found the disclosure to be belated and contrary to the provisions of Rule 12.1. The Circuit Court, considering the interests of justice, declined to exclude those witnesses.

As stated above, on January 26 and 27, 2005, shortly before the February 1 trial

---

**5.** At the January 31, 2005, hearing during which Perry was removed as counsel, the Circuit Court stated: "I would have to think that counsel for the defendant would have known for some time that he had alibi witnesses out there. I don't know how you just find out at the last minute that there are alibi witnesses."

date, Perry filed supplemental witness lists, neither of which, according to the record before this Court, included addresses. On January 27, 2005, the State moved to continue the trial. The motion alleged, *inter alia,* that the State had not had adequate time to evaluate the merit of the alibi witnesses' probable testimony.

At the beginning of the January 31, 2005, hearing during which Perry and Walters were removed, Perry announced that the appellant was ready for trial. The Circuit Court, however, rescheduled the trial for April 19, 2005, and stated: "[Y]ou guys are still giving each other witnesses' names. That's not the way that it is supposed to happen. I am of the opinion this case is not ready for trial. When you all are filing discovery right up to the last minute, there is absolutely no way—that is not the way a case is supposed to be tried, either civilly or criminally." In addition, the Circuit Court cited West Virginia Trial Court Rule 32.01. That Rule, found in chapter 3 entitled "Criminal Matters," encourages the expeditious exchange of discoverable material under the West Virginia Rules of Criminal Procedure. According to the Circuit Court, the removal of Perry was in the best interests of the appellant.

■ To safeguard the integrity of its proceedings and to insure the proper administration of justice, a circuit court has inherent authority to conduct and control matters before it in a fair and orderly fashion. *Clark v. Druckman,* 218 W.Va. 427, 435, 624 S.E.2d 864, 872 (2005) (a trial court always has inherent authority to regulate and control the proceedings before it and to protect the integrity of the judicial system); *State ex rel. Blake v. Hatcher, supra,* 218 W.Va. at 415, 624 S.E.2d at 852 (the right to counsel of choice must be balanced with the court's interest in the integrity of its proceedings and the public's interest in the proper administration of justice); syl. pt. 9, *State v. Larue,* 98 W.Va. 677, 128 S.E. 116 (1925) (the conduct of the trial is left to the discretion of the presiding judge, subject to an abuse of discretion standard). As syllabus point 2 of *B.F. Specialty Company v. Charles M. Sledd Company,* 197 W.Va. 463, 475 S.E.2d 555

(1996) holds: "Trial courts have the inherent power to manage their judicial affairs that arise during proceedings in their courts, which includes the right to manage their trial docket." Syl. pt. 9, *State ex rel. Atkins v. Burnside,* 212 W.Va. 74, 569 S.E.2d 150 (2002).

■ Based upon the above, this Court holds that the authority of a trial court in a criminal case to remove a court-appointed attorney on the court's own motion, over the objection of the defendant and the attorney, is severely limited and must be supported by specific findings and conclusions placed on the record. The removal of a court appointed attorney shall be subject to an abuse of discretion standard upon review by this Court. The better practice is for the trial judge to include the findings and conclusions in the order of removal.

This Court is not unmindful that, at the time of Perry's removal, Glen D. Conway was also representing the appellant and, following his appointment by the Circuit Court, fully participated in the trial along with Laishley. Nor did the removal of Perry on the eve of the February 1, 2005, trial result in a prejudicial delay to the appellant. The Court concluded that the case should not go to trial on February 1, and the Court's rescheduling to April 19, 2005, was not unreasonable.

The discovery violations of Perry were not minor in nature. Perry placed the Circuit Court in a dilemma by announcing that the appellant was ready for trial when, as the Circuit Court determined, the State had not been given time to interview the alibi witnesses. The case was not, in fact, ready and needed to be continued once again. The Circuit Court considered, and rejected, at least one sanction other than Perry's removal, i.e., excluding the alibi witnesses. In repeatedly announcing readiness for trial, Perry, in effect, made his discovery violations an ongoing problem for the Circuit Court in securing a fair trial for the parties. Moreover, Perry's post-removal notice of appearance and motion for a speedy trial did not address the discovery violations attributed to him by the Circuit Court.

Given the status of the case on January 31, 2005, the gravity of the charge of murder of the first degree, the potential for subsequent habeas corpus proceedings had the case been tried on February 1, and for the other reasons discussed above, this Court concludes that the Circuit Court had good cause for removing Perry and for rescheduling the trial. The reasons for the removal were fully set forth by the Circuit Court on the record during the January 31, 2005, hearing. At that time, the Circuit Court considered, and rejected, the more severe sanction of excluding the appellant's alibi witnesses. *See*, Vol. 1, F.D. Cleckley, *Handbook on West Virginia Criminal Procedure*, ch. XII, B.2. (2nd. ed. Michie 1993) ("The trial court may sanction parties for failure to comply with legitimate discovery requests, and it has broad discretion to impose sanctions it deems just under the circumstances.")

## V.

### Conclusion

For the reasons stated above, the record demonstrates good cause for the removal of Perry as the appellant's court-appointed counsel. At a minimum, the removal was not error in view of the representation provided the appellant by John H. Laishley and Glen D. Conway who called a number of witnesses at trial and focused on the defense of alibi and various weaknesses in the State's case. Following the trial, both Laishley and Conway were complimented by the Circuit Court for their efforts upon the appellant's behalf, and the guardian *ad litem* noted that Laishley had been "extremely zealous."

Nothing in the record warrants the conclusion that the proceedings below were affected by any alleged violation of the appellant's right to counsel. Only last month, in *State ex rel. Bowers v. Scott*, 226 W.Va. 130, 697 S.E.2d 722 (2010), this Court reviewed a circuit court finding that, but for ineffective assistance of counsel, the outcome of the defendant's case would have been different. Holding that finding to be clearly wrong, this Court indicated that, an accused continues to enjoy the assistance of counsel, even where the assistance is marginalized by the strength of the prosecution's evidence.

Here, although the appellant's parents preferred David D. Perry to John H. Laishley, no dissatisfaction was shown toward co-counsel Glen D. Conway who represented the appellant in conjunction with both Perry and Laishley. Moreover, as explained in detail above, the assertion that Perry was the appellant's privately retained counsel of choice is notably unconvincing in view of the *nunc pro tunc* order appointing Perry as defense counsel *at his own request*. The subsequent appointment of Laishley and Conway is supported by the appellant's Eligibility Affidavit for Appointment of Legal Counsel. From the initial juvenile proceedings through this appeal, the appellant has been represented by several competent attorneys, all appointed.

Accordingly, the appellant's conviction and sentence in the Circuit Court of Cabell County, West Virginia, are affirmed.

Affirmed.

Chief Justice DAVIS dissents and reserves the right to file a dissenting opinion.

DAVIS, C.J., dissenting:

The appellant, DeAaron Fields, argued that his trial counsel of choice was improperly removed by the trial court. The majority opinion rejected Mr. Fields' argument and affirmed his conviction for first degree murder. For the reasons set out below, I dissent.

### The Trial Judge Became an Advocate for the State

The record in this case overwhelmingly supports Mr. Fields' contention that his counsel of choice, David D. Perry, was improperly removed as his attorney. After a painstakingly thorough review of the record in this case, I have reached the conclusion that the trial judge overstepped his neutrality role and became an advocate for the State when the trial court removed Mr. Perry as counsel for Mr. Fields. The record demonstrates that the State's case had fallen apart on the eve of trial. In an effort to salvage the case for the State, the trial court took the unprecedented step of removing Mr. Perry. To understand how I have reached this con-

clusion, it is necessary to first chronologically review the documentation filed in this case leading up to Mr. Perry being removed as counsel for Mr. Fields.

— June 2, 2004 Mr. Perry filed a notice of appearance while the case was under the juvenile jurisdiction of court. At that time, Mr. Perry was retained by Mr. Fields' parents for the nominal sum of $1.00.

— June 29, 2004 Mr. Perry filed a motion for bail, which was denied on July 7, 2004.

— July 7, 2004 the case was transferred to the adult jurisdiction of court.

— October 8, 2004 Mr. Fields was indicted for first degree murder.

— October 28, 2004 Mr. Fields was arraigned.

— November 8, 2004 Mr. Perry filed a motion in limine, motion to preserve certain evidence, motion to disclose vehicle evidence, motion to inspect vehicle, eight specific discovery motions, and two omnibus discovery motions.

— November 18, 2004 Mr. Perry filed a motion to disclose grand jury testimony.

— November 29, 2004 Mr. Perry filed proposed voir dire questions, jury instructions and another motion in limine.

— November 29, 2004 the trial court filed an order setting the case for trial on December 8, 2004.

— December 3, 2004, five days before trial, the State served its first discovery requests.

— December 6, 2004 Mr. Perry provided the State with a witness list.

— December 8, 2004 the court filed an order formally appointing Mr. Perry to represent Mr. Fields.

— December 8, 2004, the trial date, the State, over defense objections, requested the case be continued.

— December 21, 2004 the court filed an order granting the State's request to continue the trial and set a new trial date for February 1, 2005.

— January 21, 2005 Mr. Perry filed a notice of alibi and a general response to the State's discovery requests.

— January 24, 2005 Mr. Perry filed additional proposed jury instructions.

— January 26, 2005 Mr. Perry filed a supplemental witness list.

— January 26, 2005 Mr. Perry filed a notice of hearing to address all pending pretrial motions.

— January 27, 2005 the State filed a motion to continue the trial.

— January 27, 2005 Mr. Perry filed a supplemental witness list.

— January 28, 2005 the State filed a supplement to its discovery disclosure.

— January 28, 2005 Mr. Perry filed a memorandum opposing the State's request to continue the trial, a motion to dismiss the indictment because of perjured grand jury testimony, a motion to dismiss the indictment because of prejudicial delay in bringing the defendant to trial, and a motion to dismiss the indictment because of prosecutorial misconduct.

— January 31, 2005 a hearing was held, during which the trial court removed Mr. Perry and the State's prosecutor from the case.

— February 1, 2005 Mr. Perry filed a motion for speedy trial and a notice of appearance as retained counsel.

— February 2, 2005 the court filed two orders, without any findings, dismissing Mr. Perry as appointed counsel.

In looking at the history of the documentation in this case, it is impossible to discern anything that Mr. Perry did which would have warranted his removal from the case. In fact, the record suggests that he was very aggressive in his representation of Mr. Fields. More importantly, none of the documentation in this case revealed a motion being filed by the State, asking the trial judge to resolve a discovery dispute.

1. **The trial judge *sua sponte* raised discovery issues.** The issue of a discovery dispute in this case was not raised by the State. During the January 31, 2005 hearing, the trial judge *sua sponte* confronted Mr. Perry about discovery issues. Specifically, the trial court criticized Mr. Perry for not adding the addresses of witnesses to his general witness list and failing to provide the State alibi

witness information within the time period required by the rules of criminal procedure. To the extent that Mr. Perry failed to provide addresses of witnesses and failed to timely file alibi information, the State never filed a motion to bring these matters to the court's attention.

Rule 16(d)(2) of the West Virginia Rules of Criminal Procedure sets out the procedure to be followed when a party fails to comply with discovery requests. The following is stated under Rule 16(d)(2):

> If at any time during the course of the proceedings *it is brought to the attention of the court* that a party has failed to comply with this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed, or it may enter such other order as it deems just under the circumstances.

(Emphasis added). Rule 16(d)(2) neither expressly nor implicitly grants a trial judge authority to sua sponte raise a discovery issue as was done in this case. "Disputes about ... discovery are brought to the court by a motion for a protective order under Rule 16(d)(1) or a motion to compel or for sanctions under Rule 16(d)(2)." *United States v. McVeigh*, 954 F.Supp. 1441, 1449 (D.Colo.1997). *See State ex rel. Rusen v. Hill*, 193 W.Va. 133, 140, 454 S.E.2d 427, 434 (1994) ("Once a circuit court receives a motion requesting sanctions or relief for discovery violations, the circuit court should order, to the full extent required by the discovery rules or the court order, an immediate disclosure.").

**2. The sanction of removing Mr. Perry was not supported by the alleged discovery violations.** Assuming, for the sake of argument, that the State had properly moved the trial court for sanctions against Mr. Perry for failing to provide addresses for witnesses and failing to timely provide alibi witness information, the penalty of removing Mr. Perry as counsel has no support in our law. Professor Cleckley has addressed the issue of sanctions for discovery violations in criminal cases as follows:

> The trial court may sanction parties for failure to comply with legitimate discovery requests, and it has broad discretion to impose sanctions it deems just under the circumstances. In exercising its discretion, the trial court should impose the least severe sanction that will accomplish the desired result of prompt and full compliance with the discovery requirements. This is particularly true, when the party violating the discovery is the defendant. The court should first consider the reasons for the failure to disclose, including the party's bad or good faith, the extent to which the opponent has been prejudiced by the failure to disclose, and the feasibility of curing the prejudice by the granting of a continuance.

Franklin D. Cleckley, Vol. I, *Handbook on West Virginia Criminal Procedure*, p.I–746 (1993).

In the instant case, assuming that the trial court properly had the discovery issues before it, a constitutionally appropriate response or sanction by the court would have been an order compelling disclosure of addresses for the witnesses or precluding the witnesses from testifying. *See* Syl. pt. 1, *State v. Ward*, 188 W.Va. 380, 424 S.E.2d 725 (1991) ("Where a trial court is presented with a defendant's failure to disclose the identity of witnesses in compliance with West Virginia Rule of Criminal Procedure 16, the trial court must inquire into the reasons for the defendant's failure to comply with the discovery request. If the explanation offered indicates that the omission of the witness' identity was willful and motivated by a desire to obtain a tactical advantage that would minimize the effectiveness of cross-examination and the ability to adduce rebuttal evidence, it is consistent with the purposes of the compulsory process clause of the sixth amendment to the United States Constitution and article II, section 14 of the West Virginia Constitution to preclude the witness from testifying."). This Court has noted that "[b]ecause [removal] of a criminal defendant's chosen counsel raises problems of a constitutional dimension, it is a harsh remedy that should be invoked infrequently." *State ex rel. Blake v. Hatcher*, 218 W.Va. 407, 415, 624 S.E.2d 844, 852 (2005) (internal quotations and citation omitted).

**3. Mr. Fields' constitutional right to counsel of choice was violated.** Mr. Fields' parents retained Mr. Perry to represent him for a nominal fee of $1.00. The trial court later appointed Mr. Perry. Subsequent to Mr. Perry's removal, Mr. Fields' parents once again retained Mr. Perry. The trial court denied Mr. Perry's efforts to remain in the case. Regardless of whether Mr. Perry was characterized as a retained or appointed lawyer during the initial representation, he was Mr. Fields' retained counsel of choice after the trial court erroneously removed him.

Under the facts of this case, the trial court's refusal to allow Mr. Perry to represent Mr. Fields, for alleged discovery violations, denied Mr. Fields his constitutional right to counsel of choice. A case which helps illustrate the implications of the constitutional right to counsel is the recent United States Supreme Court decision in *United States v. Gonzalez–Lopez*, 548 U.S. 140, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006).

In *Lopez* the defendant was charged, in a federal court in Missouri, with conspiracy to distribute marijuana. The defendant's family hired attorney John Fahle to represent him. After the defendant's arraignment, the defendant contacted a California attorney, Joseph Low, to discuss whether Mr. Low would represent him, either in addition to or instead of Mr. Fahle. Mr. Low agreed to be co-counsel. During a proceeding before a federal magistrate, Mr. Low's provisional acceptance to practice in the federal district court was revoked because he passed a note to co-counsel during the proceeding.[1] Subsequent to the hearing, the defendant informed Mr. Fahle that he wanted Mr. Low to be his only attorney. Mr. Fahle filed a motion to withdraw and a motion seeking sanctions against Mr. Low for contacting the defendant while Mr. Fahle represented him. Mr. Low filed an application for admission pro hac vice. The federal district court denied his application without comment. Eventually the district court indicated that its decision not to allow Mr. Low to represent the defendant was a sanction because Mr. Low had contacted the defendant while the defendant was represented by counsel.[2] The defendant was ultimately convicted. The defendant appealed to the Eighth Circuit Court of Appeals. The Eighth Circuit reversed the defendant's conviction on the grounds that the defendant's Sixth Amendment right to paid counsel of his choosing was violated, because of the grounds relied upon by the district court to deny Mr. Low's application for admission pro hac vice. The Government appealed to the United States Supreme Court. The Supreme Court affirmed the Eighth Circuit's decision based upon the following:

The Government contends, however, that the Sixth Amendment violation is not "complete" unless the defendant can show that substitute counsel was ineffective within the meaning of *Strickland v. Washington*, 466 U.S. 668, 691–696, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)—*i.e.*, that substitute counsel's performance was deficient and the defendant was prejudiced by it. In the alternative, the Government contends that the defendant must at least demonstrate that his counsel of choice would have pursued a different strategy that would have created a "reasonable probability that ... the result of the proceedings would have been different," *id.*, at 694, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674—in other words, that he was prejudiced within the meaning of *Strickland* by the denial of his counsel of choice even if substitute counsel's performance was not constitutionally deficient....

. . . .

... [T]he Sixth Amendment right to counsel of choice ... commands, not that a trial be fair, but that a particular guarantee of fairness be provided-to wit, that the accused be defended by the counsel he believes to be best. "The Constitution guarantees a fair trial through the Due Process Clauses, but it defines the basic elements of a fair trial largely through the

---

**1.** The hearing was held before Mr. Low had an opportunity to file a motion for admission pro hac vice.

**2.** The district court also noted that the sanction was being imposed because Mr. Low had made contact with a defendant in an unrelated case who was also represented by counsel.

several provisions of the Sixth Amendment, including the Counsel Clause." *Strickland, supra,* at 684–685, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. In sum, the right at stake here is the right to counsel of choice, not the right to a fair trial; and that right was violated because the deprivation of counsel was erroneous. No additional showing of prejudice is required to make the violation "complete."

. . . .

We have little trouble concluding that erroneous deprivation of the right to counsel of choice, "with consequences that are necessarily unquantifiable and indeterminate, unquestionably qualifies as 'structural error.'" [*Sullivan v. Louisiana,* 508 U.S. 275, 282, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993).] Different attorneys will pursue different strategies with regard to investigation and discovery, development of the theory of defense, selection of the jury, presentation of the witnesses, and style of witness examination and jury argument. And the choice of attorney will affect whether and on what terms the defendant cooperates with the prosecution, plea bargains, or decides instead to go to trial. In light of these myriad aspects of representation, the erroneous denial of counsel bears directly on the "framework within which the trial proceeds," [*Arizona v. Fulminante,* 499 U.S. 279, 310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)]—or indeed on whether it proceeds at all. It is impossible to know what different choices the rejected counsel would have made, and then to quantify the impact of those different choices on the outcome of the proceedings. Many counseled decisions, including those involving plea bargains and cooperation with the government, do not even concern the conduct of the trial at all. Harmless-error analysis in such a context would be a speculative inquiry into what might have occurred in an alternate universe.

*Lopez,* 548 U.S. at 144–50, 126 S.Ct. at 2561–65, 165 L.Ed.2d 409.

The decision in *Lopez* is procedurally indistinguishable from the facts in the instant case. In both cases, defense counsel were not permitted to represent the defendants because of minor rule infractions. The decision in *Lopez* stands for the proposition that it takes more than "minor" rule infractions for a court to deny a defendant his/her right to retained counsel.

**4. The trial court removed Mr. Perry because the State's case had fallen apart on the eve of trial.** As previously indicated, on January 31, 2005, one day before Mr. Fields' trial was scheduled to start, the trial court held a hearing to consider, among other matters, the State's motion to continue the trial. The State offered only two reasons for needing a continuance and neither reason involved a discovery violation by Mr. Perry. The State argued that it needed a continuance because: (1) Mr. Fields' alibi witnesses would not talk to the State's investigator, and (2) the State's only eyewitness against Mr. Fields had changed his statement and was now claiming to not have remembered anything involved with the killing.

It is clear that the reasons given by the State for seeking a continuance demonstrate that its case against Mr. Fields was in trouble. I believe that, as a result of the reasons given by the State for needing a continuance, the trial court removed Mr. Perry and the State's prosecutor, in order to indirectly grant the State its second continuance. In other words, Mr. Fields' constitutional right to a speedy trial stood as an obstacle to the trial court granting the State a continuance. In an effort to get around Mr. Fields' constitutional right to a speedy trial, the trial judge became an advocate for the State by *sua sponte* charging Mr. Perry with discovery violations and eventually removing him.

It is a fundamental principle of law that "a criminal defendant is entitled to an impartial and neutral judge." *State v. Thompson,* 220 W.Va. 398, 410, 647 S.E.2d 834, 846 (2007). Moreover, this Court has held that "when a judge's conduct ... evidences a lack of impartiality and neutrality, or when a judge otherwise discloses that the judge has abandoned his role of impartiality and neutrality as imposed by the Sixth Amendment of the United States Constitution, we will reverse and remand the case for a new trial." *Thompson,* 220 W.Va. at 410, 647 S.E.2d at 846. The facts of the instant case present an

extreme example of a trial court abandoning its constitutionally required impartial and neutral role, by removing Mr. Perry, in an effort to assist the State in obtaining Mr. Fields' conviction.

Based upon the foregoing, I respectfully dissent.