IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2014 Term

_____

No. 12-1249

_____

FILED

**February 5, 2014**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA,
Plaintiff Below, Respondent

v.

ORBAN HENRY SCHLATMAN, JR.,
Defendant Below, Petitioner

_____

Appeal from the Circuit Court of Fayette County
Honorable Paul M. Blake, Jr., Judge
Civil Action No. 10-F-41

AFFIRMED

_____

Submitted: January15, 2014
Filed: February 5, 2014

David S. Hart, Esq.                         Patrick Morissey, Esq.
Hayden & Hart, PLLC                    Attorney General
Beckley, West Virginia                   Laura Young, Esq.
Counsel for Petitioner                     Assistant Attorney General
                                                      Charleston, West Virginia
                                                      Counsel for Respondent

The Opinion of the Court was delivered PER CURIAM.

SYLLABUS BY THE COURT

1. "An appellate court is obligated to see that the guarantee of a fair trial under Section 10 of Article III of the West Virginia Constitution is honored. Thus, only where there is a high probability that an error of due process proportion did not contribute to the criminal conviction will an appellate court affirm. High probability requires that an appellate court possess a sure conviction that the error did not prejudice the defendant." Syl. Pt. 11, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995).

2. "Where a trial court is presented with a defendant's failure to disclose the identity of witnesses in compliance with West Virginia Rule of Criminal Procedure 16, the trial court must inquire into the reasons for the defendant's failure to comply with the discovery request. If the explanation offered indicates that the omission of the witness' identity was willful and motivated by a desire to obtain a tactical advantage that would minimize the effectiveness of cross-examination and the ability to adduce rebuttal evidence, it is consistent with the purposes of the compulsory process clause of the sixth amendment to the United States Constitution and article II[I], § 14 of the West Virginia Constitution to preclude the witness from testifying." Syl. Pt. 1, *State v. Ward*, 188 W.Va. 380, 424 S.E.2d 725 (1991).

i

3. "Before any *in camera* inspection of statutorily protected communications can be justified, a defendant must show both relevancy and a legitimate need for access to the communications. This preliminary showing is not met by bald and unilluminating allegations that the protected communications *could* be relevant or that the very circumstances of the communications indicate they are *likely* to be relevant or material to the case. Similarly, an assertion that inspection of the communications is needed only for a possible attack on credibility is also rejected. On the other hand, if a defendant can establish by credible evidence that the protected communications are likely to be useful to his defense, the trial judge should review the communications *in camera.*" Syl. Pt. 3, *State v. Roy*, 194 W.Va. 276, 460 S.E.2d 277 (1995).

Per Curiam:

Petitioner Orban Henry Schlatman, Jr., appeals from the June 28, 2010, order of the Circuit Court of Fayette County sentencing and committing him for the offense of sexual assault in the second degree.[1]  Seeking a reversal of his conviction and a new trial, Mr. Schlatman argues that his right to a fair trial was violated through the exclusion of a defense witness and the denial of his request to inspect the victim's medical and psychological records.  Having carefully reviewed the submitted record in this case against the averments of error asserted by the petitioner, we find no error and, accordingly, affirm.

## I.  Factual and Procedural Background

Through the filing of a criminal complaint on July 16, 2009, the State charged the petitioner with sexual assault in the second degree.  Detective G. A. Chapman of the Fayette County Sheriff's Department received a complaint from Edie E.[2] on June 24, 2009, who claimed that her daughter, ALM, disclosed during a counseling session that she had been sexually assaulted by Mr. Schlatman.  According to ALM, the petitioner stopped by

---

[1]For purposes of appeal, the petitioner was resentenced twice, first by order entered on October 19, 2011, and then by order entered on September 13, 2012.

[2]Consistent with our practice of protecting minor victims, we identify both the victim and her mother through the use of initials only.  *See State ex rel. West Virginia Dep't of Human Servs. v. Cheryl M.*, 177 W.Va. 688, 689 n.1, 356 S.E.2d 181, 182 n.1 (1987); W.Va. R. App. P. 40(e)(1).

1

her school bus stop on the morning of April 10, 2009.[3]  Because it was raining, ALM accepted Mr. Schlatman's offer to give her a ride to school.  Instead of taking her directly to school, the petitioner drove to an area where there were abandoned Broughton milk trailers.[4]  Sensing something was amiss, ALM exited the stopped vehicle and ran into one of the trailers.  Because there was no lock on the trailer door, Mr. Schlatman was able to follow ALM into the trailer.  According to ALM, the petitioner pushed her to the floor, removed both her pants and her underwear, and proceeded to sexually assault her.

Following the assault, ALM got dressed. The petitioner instructed her to get back into his vehicle and he then drove her to school.  In explanation of why she did not report the incident on the date it occurred, ALM stated she was afraid that no one would believe her.  After the date of the sexual assault, the victim indicated that she did not see Mr. Schlatman again.

When Mr. Schlatman was questioned by the police, he acknowledged that he knew ALM.  Rather than an act of sexual assault, however, he claimed that the sexual act that

---

[3]The victim in this case was sixteen years old at the time of the assault and the perpetrator was forty-eight years old.

[4]Although the trailers had been removed when the police went to investigate, law enforcement was able to verify that the described trailers were at the reported location on the date of the alleged assault.

transpired on the date in question was consensual.[5]

Mr. Schlatman was indicted for second-degree sexual assault[6] and the case proceeded to trial on April 20, 2010. Following his conviction, the petitioner was sentenced to an indeterminate term of not less than ten nor more than twenty-five years.[7] It is from this conviction and correspondent sentence that Mr. Schlatman now appeals.

## II. Standard of Review

The petitioner has asserted that he was denied his right to a fair trial in connection with his conviction in this matter. Our review of this matter is governed by syllabus point eleven of *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995), in which we held:

> An appellate court is obligated to see that the guarantee of a fair trial under Section 10 of Article III of the West Virginia Constitution is honored. Thus, only where there is a high probability that an error of due process proportion did not contribute to the criminal conviction will an appellate court

---

[5]When initially questioned, Mr. Schlatman related that, on a date other than the date of the alleged assault, the victim had voluntarily performed an act of oral sex on him in the parking lot of a Holiday Inn. Upon being directed to the date in question, the petitioner insisted the sexual act at issue was consensual.

[6]The indictment was returned by the Fayette County Grand Jury on January 13, 2010.

[7]Given the nature of his conviction, the petitioner was also sentenced to thirty years of supervised release. *See* W.Va. Code § 62-12-26 (2010) (providing for extended supervision for certain sex offenders).

3

affirm. High probability requires that an appellate court possess a sure conviction that the error did not prejudice the defendant.

With this standard in mind, we proceed to determine whether the petitioner was denied a fair trial as the result of a denial of due process.

## III.  Discussion

The petitioner seeks to overturn his conviction on two grounds.  First, he contends that his right to compulsory process guaranteed by the sixth amendment to the federal constitution[8] was violated because he was denied the right to compel a defense witness to testify on his behalf.  Second, he maintains that he was wrongly denied the right to inspect the victim's medical and psychological records.  We will address each of these assignments of error in turn.

## A. Denial of Compulsory Process

On the morning of trial, the State moved to exclude one of the defense witnesses–Mr. Bryan Arrington.[9]  Although Mr. Arrington's identity as a co-worker who regularly rode to work with the petitioner was known before trial, not until 8:57 on the

---

[8]The sixth amendment to the United States Constitution guarantees the accused in a criminal trial "to have compulsory process for obtaining witnesses in his favor."  U.S. Const. amend. VI.

[9]At the time of the State's motion, the jury had been impaneled but opening statements had not been given.

4

morning of trial did the State learn that Mr. Arrington intended to testify he was with Mr. Schlatman from 6:25 a.m. on the date of the alleged sexual assault until 7:30 a.m.[10] Previously, Mr. Arrington had indicated he had no memory of the date in question. Given that the victim exposited in her statement that she was picked up by Mr. Schlatman at approximately 6:15 a.m., the ten-minute period between when she got into the petitioner's vehicle and when Mr. Arrington was purportedly picked up by Mr. Schlatman suggested that Mr. Arrington's testimony would be that of an alibi witness.

The State moved to exclude Mr. Arrington as a defense witness under Rule 12.1 of the Rules of Criminal Procedure. Under that rule, an alibi witness is required to be disclosed to the State no later than ten days before trial. *See* W.Va. R. Crim. P. 12.1. Failure to comply with the requirements of Rule 12.1 includes the possible exclusion of an alibi witness. *See id.* at 12.1(d); *State v. Fields*, 225 W.Va. 753, 759-60, 696 S.E.2d 269, 275-76 (2010) (recognizing trial court's authority under Rule 12.1 to impose sanction of excluding alibi witnesses). After listening to the arguments advanced by the State[11] in support of excluding Mr. Arrington, the trial court granted the State's motion, ruling that the "witness

---

[10]Their work day began at 7:30 a.m.

[11]The prosecutor explained that he had first learned of the defendant's intention to call Mr. Arrington as a witness five days prior to trial. Due to the prosecutor's schedule, however, the first opportunity for him to speak to Mr. Arrington was the morning of trial. While the prosecutor was quick to absolve defense counsel of any fault with regard to the last minute disclosure, he was adamant that Mr. Arrington's testimony would violate the provisions of Rule 12.1.

5

will not be allowed to testify as to alibi in this matter." At this point, defense counsel asked to vouch the record as to what Mr. Arrington's testimony would have been. The trial court permitted the record to be vouched.

As the petitioner acknowledges, the testimony that Mr. Arrington would have given was "limited." In vouching the record as to his expected testimony, defense counsel submitted the written statement Mr. Arrington had given to the police on the morning of trial. In this statement, Mr. Arrington indicated he had no specific recall of the date in question but that "[i]f time records show both [of us were] there that day then we rode together [as] [h]e was my only ride." Also included in his statement was the fact that the petitioner routinely picked Mr. Arrington up for work between 6:25 and 6:30 a.m.

Extrapolating from this statement, the petitioner argues that "it is clear from Mr. Arrington's statement that his failure to remember the day of the alleged sexual assault specifically would suggest that he didn't notice any difference in Mr. Schlatman's appearance or demeanor, blood on Mr. Schlatman's clothing or injuries to Mr. Schlatman's face."[12] With similar conviction, the petitioner advances that "[s]uch testimony would have undercut the credibility of the alleged victim."

---

[12]With this explanation, the petitioner was responding to the victim's trial testimony that "she struck Mr. Schlatman in the face when he allegedly sexually assaulted her and that she bled for a couple of hours after the assault."

Relying upon federal precedent, the petitioner maintains that his right to call witnesses in his defense is grounded in the compulsory process clause of the sixth amendment.[13] *See Taylor v. Illinois*, 484 U.S. 400, 409 (1988) (recognizing right of criminal defendant to present witnesses for purpose of establishing defense as fundamental element of due process) (citing *Washington v. Texas*, 388 U.S. 14, 19 (1967)). The constitutional concerns raised by the exclusion of an untimely-disclosed defense witness were addressed by this Court in syllabus point one of *State v. Ward*, 188 W.Va. 380, 424 S.E.2d 725 (1991):

> [W]here a trial court is presented with a defendant's failure to disclose the identity of witnesses in compliance with West Virginia Rule of Criminal Procedure 16,[14] the trial court must inquire into the reasons for the defendant's failure to comply with the discovery request. If the explanation offered indicates that the omission of the witness' identity was willful and motivated by a desire to obtain a tactical advantage that would minimize the effectiveness of cross-examination and the ability to adduce rebuttal evidence, it is consistent with the purposes of the compulsory process clause of the sixth amendment to the United States Constitution and article II[I], § 14 of the West Virginia Constitution to preclude the witness from testifying.

188 W.Va. at 381, 424 S.E.2d at 726 (footnote added).

Applying the holding of *Ward* to this case, the petitioner contends that the absence of any willfulness with regard to the timing of defense counsel's disclosure of Mr.

---

[13]*See supra* note 8.

[14]Rule 16 governs discovery in criminal matters.

7

Arrington as a witness militates in favor of permitting his testimony. In explanation of the dilatory disclosure, the petitioner states that when Mr. Arrington was reinterviewed five days before trial, he "was able to provide more detailed information that would have been helpful to Mr. Schlatman." When this was realized, Mr. Schlatman's counsel immediately contacted the State to reveal that Mr. Arrington would be called as a defense witness. Had Mr. Arrington been permitted to testify at trial, the petitioner maintains that the jury would have appreciated the "tight" window of time in which the alleged sexual assault could have taken place. The petitioner advocates additionally that Mr. Arrington's testimony "could further have shown that there was nothing unusual about Mr. Schlatman's work appearance on the morning in question that would have been consistent with a violent sexual assault."

Responding to the petitioner's arguments, the State questions whether Mr. Schlatman preserved error on this issue. While defense counsel sought permission to and did vouch the record as to the testimony of Mr. Arrington, no actual objection was made to the trial court's exclusion of Mr. Arrington as a defense witness. Consequently, the State argues that the petitioner has waived his right to assert this error. *See State v. Miller*, 194 W.Va. 3, 17, 459 S.E.2d 114, 128 (1995) (recognizing that "'the failure of a litigant to assert a right in the trial court likely will result' in the imposition of a procedural bar to an appeal of that issue") (quoting *U.S. v. Calverly*, 37 F.3d 160, 162 (5th Cir. 1994)). The State further maintains that the issue fails to rise to the level of plain error. *See generally* Syl. Pt. 4, *State*

8

*v. England*, 180 W.Va. 342, 376 S.E.2d 548 (1988); *see also* Syl. Pt. 7, *State v. LaRock*, 196 W.Va. 294, 470 S.E.2d 613 (1996).

Even assuming that error was preserved, the State contends that the petitioner failed to comply with the provisions of Rule 12.1 for the disclosure of alibi witnesses. Acting within its discretion, the trial court properly excluded Mr. Arrington as an alibi witness. *See* W.Va. R. Crim. P. 12.1(d). Looking to the substance of Mr. Arrington's testimony, the State observes that his testimony would have been of limited value to the petitioner. Due to the fact that Mr. Arrington remembered nothing about the date of the alleged sexual assault, including whether he even worked that day,[15] his testimony would have been speculative. Based on his inability to recall the date in question, the State asserts that Mr. Arrington's testimony could not have served to undermine the victim's credibility. Because ALM did not testify that the petitioner had any noticeable physical effects such as scratches or blood stains to his person as a result of the assault,[16] the State further argues that Mr. Arrington's purported failure to notice such effects is of no moment.

Upon our review of this issue, we find no abuse of discretion with regard to the

[15]While the plant comptroller testified as to Mr. Schlatman being at work on the subject date, she did not offer testimony as to Mr. Arrington's presence at work on that date.

[16]According to the petitioner, Mr. Arrington's testimony would have discredited ALM's statement that she bled for several hours after the assault and that she struck Mr. Schlatman in the face.

9

trial court's decision to apply the sanction expressly provided in Rule 12.1 of the Criminal Rules of Procedure for the non-timely disclosure of an alibi witness. Mr. Arrington's only value as a witness, given his total lack of recall of the date in question, was to suggest that the petitioner could not have had time to commit the alleged sexual assault between when he picked ALM up from the school bus stop and when he later picked up Mr. Arrington. The failure of the petitioner to prove that Mr. Arrington was at work on the date of the alleged sexual assault[17] combined with the petitioner's seemingly unfounded representation that Mr. Arrington, upon his requestioning by defense counsel just days before trial, "was able to provide more detailed information,"[18] convinces this Court that the trial court did not commit error in excluding Mr. Arrington as a witness. And, as the provisions of Rule 12.1(d) make clear, the exclusion of an alibi witness for non-compliance does not "limit the right of the defendant to testify." W.Va. R. Crim. P. 12.1(d). Had Mr. Schlatman chosen to testify as to the impossibly short window of time during which the assault could have occurred, he could have taken the stand to so testify.

---

[17]While two illegible time cards were submitted as part of the record, there was no testimony adduced at trial that Mr. Arrington reported for work on the date in question. *See supra* note 15.

[18]Given that the proffer of Mr. Arrington's testimony was consistent with his original statement that he had no specific recall of the date of the alleged assault, no additional details appear to have surfaced during the pre-trial questioning.

## B. Inspection of Victim's Records

As an alternative ground for appeal, the petitioner asserts that he was wrongly denied access to ALM's medical and psychological records. During discovery of this case, the petitioner filed a motion to compel discovery of exculpatory evidence pursuant to *Brady v. Maryland*.[19] Through this motion, Mr. Schlatman sought disclosure of records pertaining to the victim's purported hospitalization for psychiatric treatment as well as records related to test results for sexually transmitted diseases.

After hearing argument on pending pre-trial motions on March 1, 2010, which included the motion to compel exculpatory evidence, the trial court made the following ruling:

> 1. The State has acknowledged their obligation to provide exculpatory evidence which may be contained in the alleged victim's psychiatric, psychological and medical records and toward that end have obtained the necessary releases to gather those documents.
>
> 2. However, this Court is concerned that irrelevant confidential information concerning the alleged victim could be provided through discovery to the defense, shared with the defendant, and broadcast to the public at large.
>
> 3. Therefore, the State shall review all gathered documentation and disclose only that information which clearly falls under the holdings of *Brady v. Maryland*, then, as an officer of the Court, counsel for the defendant will review the remaining information

---

[19]373 U.S. 83 (1963).

and if she believes that any of the remaining information is relevant and necessary to properly defend her client, and the State disagrees, then this Court will review such documents, *in camera*.

4. Unless formally disclosed by the State, or Ordered disclosed by this Court, the substance of such psychiatric, psychological and/or medical records of the alleged victim will not be disclosed to any person not an attorney involved in this case.

Following the issuance of this ruling, the State provided the trial court with records from Appalachian Psychiatric Services for review.[20] By order entered on March 10, 2010, the trial court found that the submitted records did not contain any "exculpatory evidence or impeachment evidence" and, consequently, would not be disclosed to the petitioner.

While acknowledging he had never inspected the subject records, the petitioner nevertheless contends that "the disclosure of these records would have assisted [him] in his defense" and that "the records are clearly relevant to [his] guilt or innocence." Essentially, Mr. Schlatman complains that without these records, the content of which is unknown to him, he had no way to attack the victim's claim that the petitioner stole her innocence. Based on speculation only, he argues that this denied opportunity to inspect the victim's treatment

---

[20]In the enclosure letter dated March 4, 2010, counsel for the State indicated to the trial court that he did not believe the records contained any exculpatory information.

12

records necessarily violated his right to a fair trial.

This Court has previously addressed the concerns that disclosure of a victim's medical and psychological records presents. When the defendant sought access to a victim's medical records in *State v. Roy*, 194 W.Va. 276, 460 S.E.2d 277 (1995), for the purpose of discrediting the victim's testimony concerning prior sexual activity, we stated the following:

> Before any *in camera* inspection of statutorily protected communications can be justified, a defendant must show both relevancy and a legitimate need for access to the communications. This preliminary showing is not met by bald and unilluminating allegations that the protected communications *could* be relevant or that the very circumstances of the communications indicate they are *likely* to be relevant or material to the case. Similarly, an assertion that inspection of the communications is needed only for a possible attack on credibility is also rejected. On the other hand, if a defendant can establish by credible evidence that the protected communications are likely to be useful to his defense, the trial judge should review the communications *in camera*.

*Id.* at 279, 460 S.E.2d at 280, syl. pt. 3.

In an attempt to distinguish his need for access to ALM's confidential records from our denial of access to such records in *Roy*, the petitioner argues that the records are clearly relevant to his guilt or innocence. In making the affirmative statement that the subject records would have allowed him to impeach the victim, Mr. Schlatman offers nothing more than what we cautioned against in *Roy*: bold-faced intimations concerning the existence of

13

relevant information. Given the obligation to uphold the law imposed on both the prosecutor as an officer of the Court as well as on the trial court in conducting its independent review of the subject records, we are left with the firm conviction that the documents at issue did not contain information that would have assisted the petitioner in the defense of his case.

Moreover, we agree with the State that the trial court adhered to the procedures established in *Roy* for examining whether the privileged medical and psychological records of a victim should be subject to disclosure. *See also* Syl. Pt. 3, *Nelson v. Ferguson*, 184 W.Va. 198, 399 S.E.2d 909 (1990).[21] In this case, the records turned over to the trial court in response to the State's obligation to comply with *Brady* were determined to be devoid of exculpatory content or impeachment value. Consequently, there was no obligation to disclose these confidential treatment records to the petitioner.

---

[21]"When the mental health records of a prospective witness are sought for the purpose of impeaching the witness' credibility, the circuit court should first examine the records *ex parte* to determine if the request is frivolous. If the court finds probable cause to believe that the mental health records contain material relevant to the credibility issue, counsel should be allowed to examine the records, after which an *in camera* hearing should be held in which the requesting party's counsel designates the parts of the records he believes relevant, and both sides present arguments on the relevancy of those parts."

**IV.  Conclusion**

Upon our careful review of the record in this matter, we do not find evidence of a denial of either due process or a fair trial.  Accordingly, the June 28, 2010, sentencing order of the Circuit Court of Fayette County is affirmed.

Affirmed.