**STATE OF WEST VIRGINIA**

**SUPREME COURT OF APPEALS**

| | |
|---|---|
| **State of West Virginia,**<br>**Plaintiff Below, Respondent** | **FILED**<br>**February 26, 2020**<br>released at 3:00 p.m.<br>EDYTHE NASH GAISER, CLERK<br>SUPREME COURT OF APPEALS<br>OF WEST VIRGINIA |

**vs)  No. 18-0731** (Nicholas County 17-F-29)

**Jamia Dawn Coleman,**
**Defendant Below, Petitioner**

**MEMORANDUM DECISION**

Petitioner Jamia Dawn Coleman, by counsel, James R. Milam II, appeals the August 29, 2018, sentencing order entered by the Circuit Court of Nicholas County following her conviction for the felony offense of embezzlement.  The petitioner contends that the trial court committed reversible error by giving the jury preliminary instructions while she was absent from the courtroom.  She also asserts that the trial court abused its discretion by refusing to allow her to call a witness in support of her alibi defense.  Finally, she argues that the evidence presented at trial was insufficient to support her conviction. Respondent State of West Virginia, by counsel, Mary Beth Niday, filed a response.

This Court has considered the parties' briefs, oral arguments, and the record on appeal.  Upon review of the applicable authorities, this Court finds no substantial question of law and no prejudicial error.  For these reasons, a memorandum decision affirming the petitioner's conviction is appropriate under Rule 21 of the Rules of Appellate Procedure.

The petitioner was indicted by a Nicholas County grand jury on May 9, 2017, on one count of felony embezzlement.[1]  The offense allegedly occurred while the petitioner was employed as a waitress at the Long Point Grille & Bar during the period of April 2015 through February 2016.  The State alleged that the petitioner knowingly removed various food and drink items from orders of cash-paying customers after they paid their bills and kept the money the customers paid for those items for herself.[2]  The evidence indicated that

---

[1] *See* W.Va. Code § 61-3-20.

[2] At trial, the evidence showed that Long Point Bar & Grille utilized a computerized system to keep track of its inventory and sales.  The restaurant owner testified that the waitresses used iPads to take their customers' orders, which were automatically transmitted

1

the petitioner had removed items from customers' bills approximately 1,529 times, totaling $6,117.46.

The petitioner's trial began on March 20, 2018. A week before her trial, the petitioner served a Notice of Alibi Defense upon the State. The petitioner indicated that her mother-in-law would testify that she was in the State of Virginia on certain dates that she was alleged to have committed some of the embezzlement transactions. The State objected to the proposed evidence, contending that the notice was untimely. The trial court agreed and did not allow the petitioner to present her mother-in-law's testimony.

Following a two-day trial, the petitioner was convicted by the jury of one count of felony embezzlement. Thereafter, she moved for a judgment of acquittal alleging, *inter alia*, that the evidence was insufficient to support her conviction. The trial court denied her motion. At her sentencing hearing, the petitioner was ordered to serve one to ten years in the penitentiary for her conviction, but the trial court stayed the sentence and ordered her to serve thirty days in the regional jail followed by a period of home incarceration to be determined by the court.[3] Upon entry of the sentencing order, the petitioner filed this appeal.

The petitioner first contends that the trial court committed reversible error by giving the potential jurors preliminary instructions while she and her attorney were in the hallway outside the courtroom discussing her juror strikes following the completion of voir dire. She argues that by giving the jury instructions in her absence, the trial court violated her right to be present at a critical stage of the proceeding. The State maintains the petitioner suffered no prejudice by being absent while a portion of the preliminary instructions were given and that if any error occurred, it was harmless.

"The general right of a criminal defendant to be present during courtroom proceedings is addressed through the interpretation of the state constitution, a Court rule

_____

to the kitchen. Cash tickets remained open until payment was applied. Therefore, it was possible to print the customer's bill, collect the cash payment from the customer, and then remove items from that customer's order before applying the payment. In contrast, when payment was made by credit card, the order was automatically closed when the credit card was swiped and alterations to the bill could not be made thereafter. The waitresses only printed server summaries at the end of their shifts, which they gave to the restaurant along with the money they collected from customers minus tips. The restaurant owner testified that she discovered the missing funds by accident one day when she accessed the computer system to determine which waitress had sold a certain bottle of wine. At that point, she noticed a pattern of drink orders being deleted from customers' bills.

[3] The petitioner was also ordered to pay restitution in the amount of $6,117.46 and the costs and fees of prosecution.

and statute. Consequently, our review of the issue . . . is plenary." *State v. Sites*, 241 W.Va. 430, 443, 825 S.E.2d 758, 771 (2019). This Court has long recognized that "Section 14 of Article III of the West Virginia Constitution, as well as the Fifth and Sixth Amendments to the United States Constitution, establishes a criminal defendant's right to be present at all critical stages of a trial." *State v. Crabtree*, 198 W.Va. 620, 629, 482 S.E.2d 605, 614 (1996). Accordingly, this Court has held:

> The defendant has a right under Article III, Section 14 of the *West Virginia Constitution* to be present at all critical stages in the criminal proceeding; and when he is not, the State is required to prove beyond a reasonable doubt that what transpired in his absence was harmless.

Syl. Pt. 6, *State v. Boyd*, 160 W.Va. 234, 233 S.E.2d 710 (1977). As noted above, a criminal defendant is also afforded the right to be present at the critical stages of trial by statute and rule. The statutory basis for this right is contained in West Virginia Code § 62-3-2, which provides: "A person indicted for felony shall be personally present during the trial therefor." Likewise, "[t]he right of an accused to be present at every stage of a criminal trial is also protected by *W.Va.R.Crim.P.* 43." *State v. Barker*, 176 W.Va. 553, 556, 346 S.E.2d 344, 347 (1986). Rule 43(a) of the West Virginia Rules of Criminal Procedure provides: "The defendant shall be present at the arraignment, at the time of the plea, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule."

In *Boyd*, this Court observed that "a critical stage in the criminal proceeding is one where the defendant's right to a fair trial will be affected." *Id.* at 246, 233 S.E.2d at 719. Elaborating further, this Court stated that "[g]enerally, all matters starting with commencement of the actual trial require the presence of the accused through final judgment." *Id.* at 246-47, 233 S.E.2d at 719. Accordingly, this Court has held that

> [i]f an accused demonstrates . . . he was absent during a critical stage of the trial proceeding, his conviction of a felony will be reversed where a possibility of prejudice appears from the abrogation of the constitutional or statutory right.

Syl. Pt. 8, *State ex rel. Grob v. Blair*, 158 W.Va. 647, 214 S.E.2d 330 (1975). Conversely,

> [i]n a criminal proceeding, the defendant's absence at a critical stage of such proceeding is not reversible error where no possibility of prejudice to the defendant occurs.

3

Syl. Pt. 3, *State ex rel. Redman v. Hedrick*, 185 W.Va. 709, 408 S.E.2d 659 (1991). There are

> two sources of prejudice to a criminal defendant when a defendant is absent from a critical stage of a criminal trial: (a) the jury might draw an adverse inference from the defendant's absence, and (b) the defendant might have information necessary to the effective advocacy of his or her case.

*Crabtree,* 198 W.Va. at 630, 482 S.E.2d at 615.

In this case, the petitioner argues that the giving of preliminary instructions during the voir dire process is a critical stage of the criminal proceeding and that because she was absent from the courtroom she had "no knowledge of the jurors' reactions or mannerisms to indicate how the Court's instructions affected their ability to fairly serve as jurors and to determine the weight and credibility to give to the witnesses who appeared before them." She further claims that as a result of her absence "the jury was unable to evaluate [her] during this time to determine if her reactions and mannerisms may aid them in their decision making process." Thus, she reasons that her constitutional right to be present at a critical stage of the proceeding was violated. The State maintains, however, that the petitioner suffered no prejudice from being absent during a portion of the trial court's preliminary instructions to the jurors. The State notes that there is no evidence in the record to suggest any juror bias, and the petitioner has not challenged the substance of the trial court's instructions.

The record reflects that after voir dire was completed, both the petitioner's counsel and the State requested time to consider their respective juror strikes and petitioner's counsel asked if they could "step out" into the hallway to do so. The trial court announced that while those discussions were occurring, it was going to proceed with the preliminary instructions to the jury "to save some time."[4] Thus, while the petitioner, petitioner's counsel, and the State were in the hallway, the trial court proceeded with preliminary instructions and advised the jury of the six stages of every jury trial. The trial court further instructed the jury that they were the sole judge with respect to witness credibility determinations and the weight of the evidence. The trial court defined the term "credibility" and provided the criteria to consider in making a credibility determination. The record shows that the petitioner and her counsel reentered the courtroom while the court was explaining the credibility criteria. The State came back into the courtroom

---

[4] Petitioner's counsel did not object when the trial court stated that it was going to give the jurors preliminary instructions while the parties were considering their juror strikes. The State does not argue in this appeal that the petitioner waived her right to be present by failing to object.

4

shortly thereafter, while the trial court was giving instructions regarding the burden of proof.

Upon review, the record shows no reasonable possibility that the petitioner suffered any prejudice while she was briefly absent from the courtroom during the trial court's preliminary instructions to the jury. With respect to the first potential source of prejudice outlined above, the record reflects the State was absent from the proceeding at the same time as the petitioner and her counsel. The same was true in *Crabtree*. In that case, the trial judge went into the jury room alone on two occasions to reinstruct the jury upon their request. Finding no prejudice in that situation, this Court explained:

> [W]e note that neither party was present at the time the trial judge spoke alone to the jury. If there was prejudice to the defendant, it was offset by the absence of the prosecutor. Given this fact, it is difficult to believe the jury even considered the defendant's absence, much less drew an adverse inference therefrom.

*Id.* at 629-630, 482 S.E.2d at 614-15. The same reasoning is applicable in this case especially considering that the court announced in front of the jury its intention to proceed with preliminary instructions and neither party objected before leaving the courtroom. Furthermore, the petitioner and her counsel returned to the courtroom before the prosecutor.

As for the second potential source of prejudice, the record shows that the information conveyed to the jury during the petitioner's absence was not specific to the offense with which she was charged but rather was general instructions that are given during every criminal trial. Given these particular circumstances, there is simply no basis to conclude that the petitioner suffered any prejudice during her brief absence from the courtroom. Accordingly, we find no reversible error.

The petitioner next argues that the trial court erred by precluding her from presenting witness testimony to support her alibi defense. Generally, "[t]he action of a trial court in admitting or excluding evidence in the exercise of its discretion will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion." Syl. Pt. 10, *State v. Huffman*, 141 W.Va. 55, 87 S.E.2d 541 (1955), *overruled on other grounds by State ex rel. R.L. v. Bedell*, 192 W.Va. 435, 452 S.E.2d 893 (1994). In this case, the petitioner argues that by excluding the testimony of her alibi witness, the trial court violated her constitutional right to call witnesses on her own behalf. Clearly,

> [a]n appellate court is obligated to see that the guarantee of a fair trial under Section 10 of Article III of the West Virginia Constitution is honored. Thus, only where there is a

5

high probability that an error of due process proportion did not contribute to the criminal conviction will an appellate court affirm. High probability requires that an appellate court possess a sure conviction that the error did not prejudice the defendant.

Syl. Pt. 11, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995).

In this case, the trial court excluded the evidence because the petitioner's notice to the State of her alibi defense was untimely pursuant to Rule 12.1(a) of the West Virginia Rules of Criminal Procedure, which provides:

> Upon written demand of the attorney for the state stating the time, date and place at which the alleged offense was committed, the defendant shall serve within 10 days, or at such different time as the court may direct, upon the attorney for the state a written notice of the defendant's intention to offer a defense of alibi. Such notice by the defendant shall state the specific place or places at which the defendant claims to have been at the time of the alleged offense and the names and addresses of the witnesses upon whom the defendant intends to rely to establish such alibi.

The record shows that one week before trial the petitioner first served her "Notice of Alibi Defense" on the State, indicating that she would present testimony from her mother-in-law to demonstrate that she was in Stuart, Virginia, from December 11-13, 2015, and January 29-31, 2016. The State then moved to exclude the evidence as untimely.[5] In

---

[5] The State initially submitted its request for discovery to the petitioner on June 8, 2017, specifically asking for notification of the petitioner's intent to present an alibi defense. Having received no response, the State then filed a motion to compel petitioner to respond to its discovery materials. The petitioner did not object, and the trial court granted the State's motion at a status hearing on August 9, 2017. At that hearing, petitioner's counsel stated that petitioner had an alibi defense based upon her absence from the state of West Virginia on at least twenty to thirty dates when the alleged acts of embezzlement were to have occurred. At a subsequent hearing in October 2017, petitioner's counsel, having not yet produced any discovery regarding petitioner's alibi defense, indicated that a "ping expert" had been located who would testify that the petitioner's cell phone records showed that she was not in the state of West Virginia on certain dates she allegedly embezzled money from her employer. The trial court ordered the petitioner to produce an expert report and the "ping" reports within forty-five days. No such evidence was produced, nor was there any further mention of an alibi defense until

response to the motion to exclude, the petitioner's counsel stated at the pre-trial hearing that "we just recently found that we can prove an alibi defense in this case . . . and we found 2 weekends that we can show the defendant wasn't working." He further stated that he did not learn of the alibi defense evidence until Friday, March 9, 2018, and given the court's closure on Monday, March 12, 2018,[6] the earliest date that he could file the notice was Tuesday, March 13, 2018. The trial court then granted the State's motion to exclude, finding the notice to be "outside the time frame."

The petitioner contends that the sanction of excluding evidence should only be used in extreme circumstances and absent evidence of a strategic plan on the part of a defendant to unfairly surprise the State, the sanction should not be imposed. She further argues that the "ends of justice were defeated" here because the State introduced evidence that she altered customer transactions on dates that she was out of the State and she was precluded from introducing witness testimony to rebut the evidence in violation of her constitutional right to call witnesses in her own defense.

The State maintains that the actual notice of the nature of the petitioner's alibi defense was untimely, and the circuit court did not abuse its discretion in excluding witness testimony to support the petitioner's alibi defense. The State further argues that even if the evidence should have been admitted, it was harmless error because there was evidence that the petitioner committed embezzlement transactions on many occasions, other than the days she was purportedly out of the State, which supports her conviction for one count of embezzlement.

This Court has recognized that "failure to comply with the requirements of Rule 12.1 includes the possible exclusion of an alibi witness." *State v. Schlatman*, 233 W.Va. 84, 87, 755 S.E.2d 1, 4 (2014); *see also State v. Fields*, 225 W.Va. 753, 759–60, 696 S.E.2d 269, 275–76 (2010) (recognizing trial court's authority under Rule 12.1 to exclude alibi witnesses). In *Schlatman*, this Court looked to *State v. Ward*, 188 W.Va. 380, 424 S.E.2d 725 (1991), which addressed constitutional concerns arising from the exclusion of untimely-disclosed defense witnesses. In syllabus point one of *Ward*, this Court held:

> Where a trial court is presented with a defendant's failure to disclose the identity of witnesses in compliance with West Virginia Rule of Criminal Procedure 16[7] the trial court

---

March 13, 2018, when the petitioner first served her notice on the State regarding her mother-in-law's testimony.

[6] The record indicates that the courthouse was closed on this date because of a snowstorm.

[7] Rule 16 of the Rules of Criminal Procedure addresses discovery in criminal cases.

must inquire into the reasons for the defendant's failure to comply with the discovery request. If the explanation offered indicates that the omission of the witness' identity was willful and motivated by a desire to obtain a tactical advantage that would minimize the effectiveness of cross-examination and the ability to adduce rebuttal evidence, it is consistent with the purposes of the compulsory process clause of the sixth amendment to the United States Constitution and article II[I], § 14 of the West Virginia Constitution to preclude the witness from testifying.

188 W.Va. at 381, 424 S.E.2d at 726 (footnote added). As noted above, the petitioner claims no intent to surprise the State with her alibi evidence and asserts that the notice was provided as soon as possible. The State maintains that the court acted within in its discretion in refusing to allow the petitioner to present her mother-in-law's testimony and that even if the testimony were permitted, it would have had limited value given there was evidence that the petitioner altered customers' bills more than 1,500 times thereby embezzling $6,117.46.

Upon review, we are unable to find the trial court abused its discretion by applying the sanction allowed by Rule 12.1 of the Rules of Criminal Procedure. The petitioner indicated that her mother-in-law would testify that she was in Virginia on two separate weekends, December 11-13, 2015 and January 29-31, 2016. In order to convict the petitioner of a felony,[8] the State had to prove that she embezzled at least $1,000.00. The record does not support a finding that the amount of money embezzled on the days the petitioner was allegedly in the State of Virginia was such that the remaining evidence did not support her conviction. Accordingly, the petitioner was not prejudiced by the exclusion of this evidence.[9]

---

[8] A person who commits embezzlement is guilty of larceny. W.Va. Code § 61-3-20. Pursuant to West Virginia Code § 61-3-13(a) (1994), in pertinent part, "[i]f a person commits simple larceny of goods or chattels of the value of one thousand dollars or more, such person is guilty of a felony, designated grand larceny[.]"

[9] We note that Rule 12.1(d) provides:

Upon the failure of either party to comply with the requirements of this rule, the court may exclude the testimony of an undisclosed witness offered by such party as to the defendant's absence from or presence at the scene of the alleged offense. This rule shall not limit the right of the defendant to testify.

8

The petitioner's final argument is that the evidence was insufficient to support her conviction. "The Court applies a de novo standard of review to the denial of a motion for judgment of acquittal based upon the sufficiency of the evidence." *State v. Juntilla*, 227 W.Va. 492, 497, 711 S.E.2d 562, 567 (2011). Furthermore,

> "'[u]pon motion [for judgment of acquittal], the evidence is to be viewed in the light most favorable to [the] prosecution. It is not necessary in appraising its sufficiency that the trial court or reviewing court be convinced beyond a reasonable doubt of the guilt of the defendant; the question is whether there is substantial evidence upon which a jury might justifiably find the defendant guilty beyond a reasonable doubt.' *State v. West*, 153 W.Va. 325, [168 S.E.2d 716] (1969)." Syl. Pt. 1, *State v. Fischer*, 158 W.Va. 72, 211 S.E.2d 666 (1974).

Syl. Pt. 5, *State v. Grimes*, 226 W.Va. 411, 701 S.E.2d 449 (2009). In addition, this Court has explained:

> The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syl. Pt. 1, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995).

In this case, the petitioner contends that the State failed to present any evidence concerning the element of intent. In that regard, she maintains that the State failed to show that she performed the alleged transactions "with the intent to permanently deprive Long Point Grille & Bar of the use and possession" of its money.

The elements of embezzlement were identified by this Court long ago in syllabus point two of *State v. Moyer*, 58 W.Va. 146, 52 S.E. 30 (1905), as follows:

Accordingly, the petitioner could have testified that she was not in the State on certain dates that she was alleged to have committed embezzlement transactions.

9

[I]n order to constitute the crime of embezzlement it is necessary to show (1) the trust relation of the person charged, and that he falls within that class of persons named; (2) that the property or thing claimed to have been embezzled or converted is such property as is embraced in the statute; (3) that it is the property of another person; (4) that it came into the possession or was placed in the care of the accused under and by virtue of his office, place, or employment; (5) that his manner of dealing with or disposing of the property constituted a fraudulent conversion and an appropriation of the same to his own use; and (6) that the conversion of the property to his own use was with the intent to deprive the owner thereof.

*See also* Syl. Pt. 19, *State v. Riley*, 151 W.Va. 364, 151 S.E.2d 308 (1966), *overruled on other grounds by Proudfoot v. Dan's Marine Serv., Inc.*, 210 W.Va. 498, 558 S.E.2d 298 (2001) ("The essential elements of embezzlement are a trust relationship to the property or money involved, belonging to someone else and in the possession of the defendant by virtue of his office and converted to his own use with intent to defraud."). With respect to the intent element, this Court has more recently explained that

common-law embezzlement (and statutory embezzlement pursuant to paragraph one of W. Va. Code § 61-3-20; i.e. embezzlement which does not involve a public official) requires as an element of proof that the defendant intended to permanently deprive an owner of the use of his property. This particular element of proof is what renders garden variety embezzlement a specific intent offense.

*State v. Brown*, 188 W.Va. 12, 16 n.4, 422 S.E.2d 489, 493 n.4 (1992).

The petitioner bases her argument on the fact that there was no evidence that her employer, or anyone else, actually observed any improper conduct on her part. In other words, the petitioner says there was no evidence to show that the bills were altered for an improper reason. The State maintains, however, that the intent element can be proven by circumstantial evidence and that in this instance, it was reasonable for the jury to infer that the petitioner intended to permanently deprive her employer of its money because she altered her customers' bills approximately 1,529 times and the restaurant never received the money for the items petitioner removed from the customers' bills after payment was made.

In *State v. Berry*, 239 W.Va. 226, 800 S.E.2d 264 (2017), the defendant also argued the State failed to prove the element of intent to support his embezzlement conviction. In that case, the defendant, a county commissioner, used his position to embezzle funds from

the local convention and visitor's bureau. Rejecting his argument that the State failed to prove intent, this Court explained that

> a rational jury could have concluded the petitioner's actions showed a willful intent to deprive TRTC [Three Rivers Travel Council] of the money. In particular, the direct transfer of money to another personal account held by the petitioner's son and to corporations he was operating with his son could have easily been considered by the jury as evidence of a specific intent to deprive TRTC of the money. Moreover, the State presented evidence that in 2011, a new local convention and visitor's bureau for Summers County was incorporated with the Secretary of State's office using the name BGN Convention and Visitor's Bureau. There was testimony that the petitioner deposited at least two checks from BGN's bank account into the same account held by his son in which the $41,699.05 check was deposited. Based on this evidence, a rational jury could have concluded that the petitioner was not using his son's account as a "stopgap" measure as he claimed but instead, had a specific intent to deprive TRTC of its money.

239 W.Va. at 236, 800 S.E.2d at 274. There was similar evidence in this case. Here, the State presented testimony and records showing that the petitioner's employee identification number was used to alter customers' bills more than 1,500 times to remove items paid for by the customers from their orders. A rationale jury could infer that the petitioner was the person who altered the bills. The evidence further shows that the petitioner's employer never received the money paid by the customers for those deleted orders. Based on this evidence, a rationale jury could conclude that because the customers' orders were altered after the customers paid their bills and Long Point Bar & Grille never received the money for the items removed from the orders, the petitioner intended to permanently deprive the restaurant of its money. Accordingly, we find no merit to this argument.

Having found no error, the final order of the Circuit Court of Nicholas County entered on August 29, 2018, is affirmed.

Affirmed.

**ISSUED:**  February 26, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison